# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAMELA ANN PARRIS, | ) | Case No. 23-72011-SCS |
| | ) | |
| *Debtor*. | ) | Chapter 7 |
| | ) | |

## MEMORANDUM OPINION

This matter came on for hearing on May 2, 2025, upon the Motion for Summary Judgment filed by Nations Lending Corporation, An Ohio Corporation ("Nations Lending"), by counsel, on January 30, 2025, and the opposition thereto filed by the Debtor, Pamela Ann Parris ("Ms. Parris"), who is proceeding *pro se* without the assistance of legal counsel, on February 13, 2025. The Motion for Summary Judgment relates to the Motion to Determine Secured Status Pursuant to 11 U.S.C. § 506 (the "Motion to Determine Secured Status") filed by Ms. Parris on July 19, 2024, to determine the status of a claim asserted by Nations Lending. At the conclusion of the hearing, the Court took this matter under advisement. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This Memorandum Opinion constitutes the Court's findings and conclusions of law.

## I. PROCEDURAL HISTORY

Ms. Parris filed a voluntary petition under Chapter 7 of the United Stated Bankruptcy Code on October 27, 2023. ECF No. 1.[1] The Section 341 Meeting of Creditors was held on December 5, 2023, and adjourned to December 19, 2023. ECF Nos. 12, 23. The adjourned Section 341

---

[1] All citations to "ECF No." are to documents filed in the above-captioned bankruptcy case unless otherwise noted.

Meeting of Creditors was held and again adjourned, to January 2, 2024, on which date the meeting

was concluded. ECF No. 26. The Chapter 7 Trustee, Thomas B. Dickenson, filed his Request for

Asset Notice on January 4, 2024, and requested the Clerk send notice to all creditors and parties

in interest that there may be assets available for distribution in Ms. Parris's case. ECF No. 30. The

Clerk issued the Notice of Need to File Proof of Claim Due to Recovery of Assets on January 4,

2024, which notified creditors of the need to file a proof of claim on or before April 5, 2024. ECF

No. 33.

On July 19, 2024, Ms. Parris filed an Amended Motion to Extend the Automatic Stay and

Objections to All Creditor Claims of Debt ("Motion to Extend and Claim Objections")[2] and

accompanying exhibit. ECF No. 73. Among the relief sought, Ms. Parris objects to Nations

Lending's asserted secured claim on her real property located at 413 Clara Drive, Chesapeake,

Virginia (the "Property").[3] *Id*. at 3.[4] The basis of the objection is that Nations Lending did not

provide sufficient documentation to prove the existence of its claim or the amount of the alleged

debt, despite her requests. *Id*. Ms. Parris did admit, however, that Nations Lending sent her copies

---

[2] Ms. Parris filed her original Motion to Extend the Automatic Stay and Objections to All Creditor
Claims of Debt on July 11, 2024. ECF No. 69.

[3] Among the other requests in the Motion to Extend and Claim Objections, Ms. Parris objected to
all proofs of claim filed in her case on the basis that the creditors did not provide sufficient
documentation to prove their alleged debts. ECF No. 73, at 3. Proofs of claim were filed by Capital
One N.A. (two unsecured claims, in the amounts of $8,464.02 and $3,636.90); JP Morgan Chase
Bank, N.A. (unsecured claim for $1,365.84); American Express National Bank (unsecured claim
for $7,895.30); two separate claims by Verizon (both unsecured, in the amounts of $56.61 and
$215.11); two separate claims by Wells Fargo Bank, N.A. (both unsecured, in the amounts of
$4,398.55 and $2,650.64); the Department of Treasury – Internal Revenue Service (unsecured tax
claim originally filed for $75,553.26, and later amended to the amount of $66,297.28, with
$10,410.81 asserted as a priority claim); and Citibank N.A. (unsecured claim of $1,876.50). *See*
Court Claims Register for above-captioned case (last reviewed September 23 2025). Ms. Parris
also requested that the Court extend the automatic stay for sixty (60) days and order the Chapter 7
Trustee to refrain from marketing or selling the Property. ECF No. 73, at 3-4.

[4] For clarity, all page number references refer to the page number assigned by the Case
Management/Electronic Case Files (CM/ECF) system.

of documents, although such documents were duplicative of those already in her possession. *Id*. at

1.

Nations Lending, by counsel, filed a response to the Motion to Extend and Claim

Objections on July 30, 2024, asserting that it holds a promissory note (the "Note") secured by a

deed of trust on the Property (the "Deed of Trust"). ECF No. 76, ¶ 2. Nations Lending further

contends that it has provided numerous documents to Ms. Parris, including copies of the Note,

Deed of Trust, and an allonge, and asks the Court to deny Ms. Parris's objection to its claim. *Id*.

¶¶ 4, prayer.

Ms. Parris replied on August 7, 2024, and challenged Nations Lending's assertion that it

provided her with sufficient documentation to prove it holds the Note and possesses the Deed of

Trust on the Property. *See* ECF No. 77, ¶¶ 2-7, 13-14.[5] Ms. Parris iterates concerns with an allonge

and purported assignments of the Note, asserting that she has requested, but not received, "an

authenticated copy of the Note, front and back" or in the alternative, the opportunity to view and

inspect the original Note and Deed of Trust.[6] *Id.* ¶¶ 2, 5-6, 7. Instead, she received only copies of

documents already in her possession. *Id*. ¶¶ 2, 4. Ms. Parris further argues that the balance owed

as asserted by Nations Lending is incorrect. *Id.* ¶¶ 9-12.

The Motion to Extend and Claim Objections came on for hearing on August 8, 2024, at

which Ms. Parris appeared telephonically, with the permission of the Court, and counsel for

Nations Lending and the Chapter 7 Trustee appeared in person. ECF No. 81, Order (1) Finding

Automatic Stay Remains in Effect; (2) Denying Objections to Claims, Subject to Proper Service

---

[5] Ms. Parris filed exhibits with her reply. *See* ECF No. 77, at 8-31. Among the exhibits are copies of the Note (marked Exhibit E); an allonge to the Note (Exhibit B); an amortization schedule for her loan (Exhibit I); an account history (Exhibit K); and an itemized payoff (Exhibit L).
[6] As detailed in Section III, *infra*, Ms. Parris reviewed the original Note, Deed of Trust, and an allonge prior to the May 2, 2025 hearing on the Motion for Summary Judgment.

and Filing of Proof of Service by Debtor of Objections to Claims on Proof of Claim Creditors; (3) Converting Matter as to Nations Lending Corporation to Motion to Determine Secured Status Pursuant to 11 U.S.C. § 506; and (4) Permitting Withdrawal of Request for Injunctive Relief Against Chapter 7 Trustee, entered Aug. 13, 2024 (hereinafter "Aug. 13, 2024 Order"), at 1. Upon inquiry by the Court, counsel for Nations Lending confirmed that Nations Lending would waive proper service of the motion considering the filing of its response. *Id.* at 3. Accordingly, the Court determined that the adjudication of the Debtor's objection to Nations Lending's claim could proceed. *Id.* The Court further determined that, because Nations Lending had not yet elected to file a proof of claim, the matter should be converted to a Motion to Determine Secured Status. *Id.* Finally, the Court scheduled an evidentiary hearing for December 17, 2024, to properly resolve the matter.[7] *Id.* at 4. On August 13, 2024, the Court entered an Order Establishing Deadlines that set deadlines for, among other things, the completion of discovery, the filing of pre-hearing motions, and the submission of exhibits and witness lists by both parties. *See* ECF No. 82.

Several discovery-related documents and pleadings were thereafter filed by the parties. Ms. Parris issued interrogatories and a request for the production of documents, which she filed with the Court on October 17, 2024,[8] to which Nations Lending objected on October 29, 2024. *See* ECF

---

[7] In addition to the ruling concerning Nations Lending, the Court concluded that the automatic stay remained in effect and had no present termination date. Aug. 13, 2024 Order, at 2. The Court also permitted Ms. Parris to withdraw her request for injunctive relief as to the Chapter 7 Trustee. *Id.* at 4; *see also id.* at 3. The Court denied without prejudice the remainder of Ms. Parris's objections to claim, as Ms. Parris admitted she had not properly served her pleading upon those creditors. *Id.* at 2-3. The Court advised Ms. Parris that if she properly served the claim objections on each creditor that filed a proof of claim and filed proof of such service with the Court, the Court would set a hearing on those objections. *Id.* Ms. Parris has not, to date, filed proof of proper service upon the creditors that have filed proofs of claim or otherwise refiled her objections to those claims.

[8] Local Bankruptcy Rule 7026-1(M) prohibits the filing of discovery materials with the Court unless otherwise ordered. No such order was entered in this case. However, in consideration of Ms. Parris's *pro se* status, the Court took no action with respect to the filing of the propounded discovery requests.

Nos. 85, 86. Ms. Parris filed corrected interrogatories on November 5, 2024, to which Nations

Lending again objected on November 13, 2024. *See* ECF Nos. 87, 89. Ms. Parris then filed a

Motion to Compel Discovery Requests to Nations Lending Corporation (the "Motion to Compel")

on November 19, 2024. ECF No. 90. In the Motion to Compel, Ms. Parris argued that Nations

Lending provided incomplete, non-responsive, and inadequate discovery responses and requested

that the Court order Nations Lending to (i) answer the outstanding discovery requests and (ii)

produce the original Note, the original Deed of Trust, and all original allonges and assignments of

the Note for her inspection.[9] *See id*. ¶¶ 12-14, 19, prayer. On November 20, 2024, the Court

scheduled a hearing on the Motion to Compel for December 5, 2024. ECF No. 91. Nations Lending

responded to the Motion to Compel on November 29, 2024, asserting, among other objections,

that it possesses the original Note and had offered Ms. Parris the opportunity to view it several

times, but Ms. Parris declined to do so. ECF No. 93, ¶¶ 4, 20. Instead, Ms. Parris requested that

counsel for Nations Lending "make copies of the front & back of the original wet-signature note

and the original wet-signature Deed of Trust, have the copies certified," and include such certified

documents with the discovery items Nations Lending would tender to her. *Id*. ¶ 20. Nations

Lending represented that certified copies of the documents were provided in both hard copy and

electronic versions.[10] *Id*.

---

[9] As detailed in Section III, *infra*, Ms. Parris reviewed the original Note, Deed of Trust, and an allonge prior to the May 2, 2025 hearing on the Motion for Summary Judgment.

[10] Counsel for Nations Lending represented at the December 5, 2024 hearing that she had provided the Debtor with multiple opportunities to arrange to see the original Note, only to have Ms. Parris then request a certified copy of the front and reverse side of the Note. Dec. 5, 2024 Transcript, at 4. Counsel for Nations Lending provided such document with her certification that the document provided "was a true and exact copy" of the Note, the original of which was located in counsel's office. *Id*. at 5. According to counsel for Nations Lending, Ms. Parris responded that such copy was "insufficient." *Id*. Nations Lending also previously provided a copy of the recorded Deed of Trust, and its counsel indicated that a certified copy from the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, would likewise be provided to Ms. Parris. *Id*. at 8-9.

Counsel for Nations Lending appeared at the December 5, 2024 hearing on the Motion to

Compel; Ms. Parris did not appear.[11] *See* ECF No. 104, Order Granting in Part and Denying in Part

Debtor's Motion to Compel Discovery Responses as to Nations Lending Corporation, entered Dec.

18, 2024 (hereinafter, "Dec. 18, 2024 Order"), at 1. Despite Ms. Parris's non-appearance, the Court

concluded that the best interests of justice compelled the Court to adjudicate the Motion to Compel

and Nations Lending's response.[12] *Id.* at 2. As reflected in the transcript of the December 5, 2024

hearing, the Court considered each discovery request to which Nations Lending lodged an

objection and announced individual oral rulings thereon. *See generally* Dec. 5, 2024 Transcript.

The individual rulings culminated in the Motion to Compel being granted in part and denied in

part. *See generally* Dec. 18, 2024 Order. The Court ordered Nations Lending to file certain

enumerated and supplemental discovery responses and documents with the Court in addition to

sending them to Ms. Parris. *Id.* at 10.[13] In consideration of Ms. Parris's repeated allegations that

---

[11] On December 4, 2024, Ms. Parris requested permission to attend the hearing telephonically due to her indigent status and lack of transportation. The Court considered the request and denied it, finding that Ms. Parris did not provide sufficient cause under the Court's rules to excuse her in-person appearance. *See* ECF No. 104, at 1 n.1.

[12] The Court concluded that Ms. Parris's positions and assertions were sufficiently identified and represented in writing in the Motion to Compel to allow the Court to give due consideration thereto. Dec. 18, 2024 Order, at 2.

[13] Within the order, the Court delineated its ruling on each item of Ms. Parris's discovery to which Nations Lending objected. *See id.* at 3-9. In addition, the Court ordered Nations Lending to file with the Court amended and supplemental responses to Ms. Parris's interrogatories and requests for the production of documents; Nations Lending timely filed these items. *Id.* at 10; *see also* ECF Nos. 108, Nations Lending Corporation's Supplemental Responses to Debtor's Interrogatories in Accordance with the Court's Order of December 18, 2024, filed Jan. 15, 2025; 110 and 114, Nations Lending Corporation's Supplemental and Amended Responses to Debtor's Requests for Production of Documents, filed Jan. 16, 2025. Nations Lending docketed a portion of its supplemental discovery responses (ECF No. 114) under seal, upon the motion filed and granted by order of the Court. ECF Nos. 109, Motion for Leave to File Records Produced in Response [to] Petitioner's Request for Production of Documents, Request Number 4, Under Seal, filed Jan. 16, 2025; 111, Order Sealing Document, entered Jan. 17, 2025. The Court permitted Nations Lending to file under seal unredacted copies of voluminous discovery documents containing numerous

Nations Lending did not possess the original Note and Deed of Trust (despite prior offers by Nations Lending to view those documents and the provision of copies of them to Ms. Parris), the Court ordered Nations Lending to produce the original Note, Deed of Trust, and closing documents for in-person viewing and inspection by Ms. Parris on January 16, 2025, at the Clerk's Office of the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division. *Id*. The Court ordered Nations Lending to also supply Ms. Parris with certified copies of the documents produced for in-person viewing and inspection at the same date and time. *Id*. The Court intentionally scheduled the time and date for the viewing and inspection of the original Note, Deed of Trust, and closing documents with adequate advance notice to Ms. Parris to permit her to arrange any necessary logistics, including transportation. The Court entered an Amended Order Establishing Deadlines on December 18, 2024, which rescheduled the evidentiary hearing to March 11, 2025, to allow for the conclusion of the discovery process. *See* ECF No. 105.

Despite the Court's efforts to provide a pre-scheduled opportunity to both inspect the specified original documents and receive certified copies, Ms. Parris did not appear on January 16, 2025, to view the documents (ECF. No. 113, Notice of Compliance with the Court's Order of December 18, 2024, filed by Nations Lending Jan. 20, 2025), nor did she file anything with the Court to explain her absence. Additionally, at no point prior to the January 16, 2025 production of documents did Ms. Parris indicate to the Court that she was unavailable or had any issues precluding her attendance on that date.

On January 30, 2025, Nations Lending filed the Motion for Summary Judgment currently under consideration by the Court and provided the required notice to Ms. Parris in consideration

---

instances of account numbers and financial information, among other personal identifying information. *See* ECF No. 109, at 1-2; ECF No. 111, at 1.

of her unrepresented status. *See* ECF No. 116 (hereinafter, "Motion"); *see* Local Bankruptcy Rule

7056-1(H). The Court scheduled a hearing on the Motion for March 4, 2025, as required by Local

Bankruptcy Rule 7056-1(B), for which Nations Lending, by counsel, filed the required notice of

hearing. ECF Nos. 117, 118. Ms. Parris timely filed her opposition to the Motion for Summary

Judgment on February 13, 2025. ECF No. 119 (hereinafter, "Opposition"). On February 24, 2025,

Ms. Parris filed a pleading titled, "Motion in Opposition to Nations Lending Corporation's Hearing

for March 4, 2025," which the Court construed as a Motion to Continue. ECF No. 124. Ms. Parris

indicated she was unable to attend the March 4, 2025 hearing on the Motion for Summary

Judgment due to a prior commitment. *Id*. ¶ 4. By order entered, February 25, 2025, the Court

continued the hearing on the Motion for Summary Judgment to March 11, 2025, and ordered Ms.

Parris to appear at that hearing in person.[14] *See* ECF No. 125.

Following the scheduling of the hearing on the Motion for Summary Judgment, on

February 18, 2025, counsel for Nations Lending timely filed exhibits, an exhibit list, and a witness

list, as provided for by the Amended Order Establishing Deadlines. ECF No. 122, List of Witnesses

and Exhibits; *see also* ECF No. 123, Clerk's Receipt of Exhibits. Ms. Parris did not file any exhibits

or a witness list, nor did she object to Nations Lending's exhibits by the respective deadlines set

forth in the Amended Order Establishing Deadlines. On March 4, 2025, Nations Lending filed a

Certification Re: Stipulation of Facts, representing that its counsel prepared a draft Stipulation of

Facts for Ms. Parris's review and edits. ECF No. 131, at 1. In response, Ms. Parris advised she

would not sign any document that counsel for Nations Lending would present to her. *Id*. The

evidentiary hearing and the hearing on the Motion for Summary Judgment were ultimately

---

[14] Ms. Parris indicated in her Motion to Continue that she had secured transportation for the evidentiary hearing scheduled for March 11, 2025. ECF No. 124, at 3.

continued to May 2, 2025, due to an unanticipated and unavoidable scheduling conflict for the

Court. ECF No. 134, Second Amended Order Establishing Deadlines, entered Mar. 24, 2025. The

Second Amended Order Establishing Deadlines explicitly stated: "Except for the evidentiary

hearing date, all other deadlines remain as stated in the Court's earlier Amended Order Establishing

Deadlines, entered on December 18, 2024, and none of those deadlines are extended by entry of

this Order." *Id*. at 1.

## II. MOTION FOR SUMMARY JUDGMENT AND OPPOSITION THERETO

### A. Nations Lending's Argument That There is No Genuine Dispute as to Any Material Fact Concerning the Validity of Its Secured Claim

In the Motion for Summary Judgment, Nations Lending recounts the procedural history of

the underlying bankruptcy case and the proceedings leading to the instant hearing. *See* Motion, at

2-8. Nations Lending argues that summary judgment is proper here because the information

provided through discovery, in conjunction with representations made by Ms. Parris in her

bankruptcy schedules and statements and other pleadings filed in this case, establishes there is no

genuine dispute as to any material fact as to the validity and amount owed on its secured claim. *Id*.

at 9, 11, 14. Further, Nations Lending argues that the governing law applied to these undisputed

material facts demonstrates that the loan from Nations Lending to Ms. Parris is secured by the

Property, and Ms. Parris is indebted to Nations Lending in the amount set forth in the payoff and

reinstatement figures provided during discovery and filed with the Court. *See id*. at 9-14.

Nations Lending asserts that the following facts are both material and undisputed in support

of its status as the rightful secured creditor on the Property, beginning with Ms. Parris's ownership

of the Property. Ms. Parris is the sole owner of the Property. *Id*. at 3 and Exh. A to Motion, Certified

Copy of Record Cover Sheet and Deed of Bargain and Sale for 413 Clara Drive, Chesapeake,

Virginia 23320, between Wallace Family, LLC, as grantor, and Pamela A. Parris, grantee, dated

Jan. 30, 2018, and recorded Feb. 1, 2018, by the Clerk of the Circuit Court of the City of

Chesapeake, Virginia, at book 9879, pages 1731-1733, at 2. The record cover sheet for the Deed

of Bargain and Sale lists consideration of $369,900.00 for the sale. Motion, at 3; Exh. A, at 1. Ms.

Parris listed the Property as an asset in her Schedule A/B, noting herself as sole owner, and valuing

the Property at $545,900.00. Motion, at 3 (citing ECF No. 1, Voluntary Petition and Schedules, at

11, filed Oct. 27, 2023). Ms. Parris also acknowledged her ownership of the Property in letters sent

to the Chief Executive Officer of Nations Lending, copies of which she filed with the Court. *Id*. at

5-6 (citing ECF No. 67, Letter dated July 12, 2024, from Pamela Ann Parris to Jeremy Sopko,

CEO of Nations Lending, filed July 15, 2024 ("I, Pamela Ann Parris, a woman, in body-mind-

spirit am the owner of certain real property located at [413 Clara Drive, Chesapeake, Virginia

23320] which is security for a loan made by Nations Lending Corporation to me."); ECF No. 68,

Letter dated July 12, 2024, from Pamela Ann Parris to Jeremy Sopko, CEO of Nations Lending,

filed July 15, 2024 (stating same)).

The recorded Deed of Trust on the Property defines Ms. Parris as the Borrower and Nations

Lending as the Lender; sets forth the Property as the security for the loan; and is signed by Ms.

Parris. *Id*. at 3 and Exh. B to Motion, Certified Copy of Record Cover Sheet and Deed of Trust for

413 Clara Drive, Chesapeake, Virginia 23320, dated Jan. 31, 2018, and recorded Feb. 1, 2018, by

the Clerk of the Circuit Court of the City of Chesapeake, Virginia, at book 9879, pages 1734-1746,

at 2-4. Fact Finders Title & Settlements, Inc., is delineated as the trustee,[15] for the benefit of

Mortgage Electronic Registration Systems, Inc. ("MERS"). Motion, at 3; Exh. B, at 2. The Deed

---

[15] Nations Lending appointed Trustee Services of Virginia, LLC, as substitute trustee, in place of
Fact Finders Title & Settlements, Inc., on February 2, 2023. Motion, at 3 and Exh. E, Appointment
of Substitute Trustee, dated Feb. 2, 2023, and recorded Feb. 6, 2023, by the Clerk of the Circuit
Court of the City of Chesapeake, Virginia, at book 10636, pages 473-475, at 1.

of Trust defines MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." Exh. B, at 3. MERS executed a Corporate Assignment of Deed of Trust on October 13, 2022, and assigned the Deed of Trust made by Ms. Parris to Nations Lending, thereby making Nations Lending the beneficiary thereunder. Motion, at 10-11 and Exh. C, Certified Copy of Notice of Corporate Assignment of Deed of Trust, dated Oct. 13, 2022, and recorded Oct. 13, 2022, by the Clerk of the Circuit Court of the City of Chesapeake, Virginia, at book 10609, pages 407-408, at 1; *see also* Motion, at 11 (citing ECF No. 108, Nations Lending Corporation's Supplemental Responses to Debtor's Interrogatories in Accordance with the Court's Order of December 18, 2024 (hereinafter, "Nations Lending Interrogatory Responses"), at 21-22 (answering interrogatory concerning Nations Lending's status as beneficiary of the Deed of Trust)).

The Deed of Trust sets forth that the Property serves as security for a Note dated January 31, 2018, and signed by Ms. Parris, which "Note states that Borrower [Ms. Parris] owes Lender [Nations Lending] TWO HUNDRED NINETY FIVE THOUSAND NINE HUNDRED TWENTY AND NO/100 ************************** Dollars (U.S. $295,920.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2048." Motion, at 3, 9; Exh. B, at 3. The Note, dated January 31, 2018, made by Ms. Parris is payable to Nations Lending in the aforementioned total principal amount of $295,920.00. Motion, at 9 (citing ECF No. 110, Nations Lending Corporation's Supplemental and Amended Responses to Debtor's Requests for Production of Documents (hereinafter, "Nations Lending Document Production Responses"), at 18).[16] The Note is payable monthly for a thirty-year term

---

[16] Nations Lending included a copy of the Note, along with a certification from an employee that the Note's image is a copy of the original document it retains, among the discovery responses. Motion, at 9 (citing Nations Lending Document Production Responses, at 17-19).

beginning March 1, 2018, and ending February 1, 2048. Nations Lending Document Production Responses, at 18. Interest accrues at four percent yearly, with monthly principal and interest payments of $1,412.77. *Id*. The Note further provides, "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" *Id*. The Note contains customary provisions for, *inter alia*, prepayment, late charges, and payment default. *Id*. at 18-19. Attached to the Note are two alonges, both containing blank endorsements—one by William L. Osborne, Jr., President of Nations Lending, and a second by Keturah Kochalko, a "Final Docs Associate" of Nations Lending, which Nations Lending asserts "does not transfer [its] interest in the Note, but merely turns it into a bearer instrument." Motion, at 11-12 (citing Nations Lending Interrogatory Responses, at 2, 7-8 (answering interrogatories related to status of Note)); *see* ECF No. 114, Nations Lending Corporation's Supplemental and Amended Responses to Debtor's Requests for Production of Documents (sealed to protect personal identifying information), at 62-63 (alonges to Note). Nations Lending confirmed that the loan has never been assigned, sold, or securitized. Motion, at 11 (citing Nations Lending Interrogatory Responses, at 3, 20-22 (answering interrogatories concerning whether the Note has been securitized)).

Nations Lending represents that it maintains possession of the Note and Deed of Trust. As ordered by the Court in its December 18, 2024 Order, counsel for Nations Lending appeared in the Clerk's Office with both the original Note and Deed of Trust, among other documents. *Id*. at 8 (citing ECF No. 113, Notice of Compliance with the Court's Order of December 18, 2024, filed by Nations Lending Jan. 20, 2025); *see also id.* at 11 (citing Nations Lending Interrogatory Responses, at 7 (indicating in response to interrogatory that Nations Lending holds the Note)). Further, Exhibit D attached to the Motion for Summary Judgment is an Affidavit made under

penalty of perjury by Steven Scott, Corporate Representative and Special Projects Coordinator for

LoanCare, which services the loan on behalf of Nations Lending. *Id*. at 14 and Exh. D, Affidavit

in Support of Motion for Summary Judgment, executed by Steven Scott on Jan. 30, 2025). Mr.

Scott affirms Nations Lending's possession of the Note and its status as beneficiary of the Deed of

Trust. Exh. D, at 1.

Nations Lending cites portions of Ms. Parris's bankruptcy schedules and statements as

evidence of her own admission that Nations Lending is the proper secured creditor. Motion, at 3-

4. On Schedule D, Ms. Parris listed Nations Lending as the creditor secured by the Property. *Id*. at

3, 11 (citing ECF No. 1, Voluntary Petition and Schedules, at 23).[17] Ms. Parris further indicated

that she disputed the debt. *Id*. (citing ECF No. 1, Voluntary Petition and Schedules, at 23). On Ms.

Parris's Statement of Intention, she again acknowledges Nations Lending as the creditor regarding

the Property and indicates her desire to retain the Property by either reinstating or reaffirming the

debt. *Id*. at 4, 11 (citing ECF No. 21, Statement of Intention for Individuals Filing Under Chapter

7, filed Nov. 6, 2023). She further referenced a mortgage expense in questions 4 (listing $1,413.00

monthly mortgage payment) and 24 (indicating $800 mortgage payment increase) on Schedule J.

*Id*. at 11 (citing ECF No. 1, Voluntary Petition and Schedules, at 37, 39). Finally, Nations Lending

cites Ms. Parris's Motion to Dismiss her case, wherein Ms. Parris acknowledges the existence of

---

[17] The debt to Nations Lending was listed as disputed. ECF No. 1, Voluntary Petition and
Schedules, at 23 (Schedule D). Ms. Parris listed no other secured debts. *See id*. She also listed a
priority tax debt to the Department of the Treasury of $2,942.00, and the following nonpriority
unsecured debts in her Schedule E/F: American Express ($7,855.30); Bayport Credit Union
($5,000.00); Capital One ($3,636.90); Chase Auto ($5,257.46); Chase Cardmember Services
($1,365.84); a contingent debt to Dillard's/Wells Fargo Bank N.A. ($4,398.55); Hampton Roads
Utility Billing Service ($155.00); Verizon ($290.00); Dominion Energy ($3,025.00); Best Buy
($1,877.00); Home Depot Credit Services ($686.00); a disputed debt to Custom Carpet & Flooring
($3,717.00); two disputed debts to "NN Shipbuilding Emp. CU (Bayport Credit Union)"
($30,420.00 and $12,312.00); Wells Fargo Card Services ($2,588.00); and a disputed debt to
Travelers Personal Insurance ($461.00). *Id*. at 25-31.

secured debt on the Property. *Id*. at 4 (citing ECF No. 41, Motion to Dismiss, filed by Ms. Parris

on Jan. 24, 2024).[18]

B. Nations Lending's Argument That There is No Genuine Dispute
as to Any Material Fact Concerning the Amount of Its Secured Claim

In support of its assertion that the amount of debt Ms. Parris owes is also undisputed,

Nations Lending sets forth the following material facts. Ms. Parris listed a secured debt owed to

Nations Lending on Schedule D in the amount of $271,755.09. *Id*. at 11 (citing ECF No. 1,

Voluntary Petition and Schedules, at 23). She further listed a monthly expense for real property of

$1,413.00 on Schedule J. *Id*. (citing ECF No. 1, Voluntary Petition and Schedules, at 37).[19] Nations

Lending cites statements from Ms. Parris's Motion to Dismiss her case, in which Ms. Parris

affirmed her failure to repay certain COVID-deferred payments. *Id*. at 4, 14 (citing ECF No. 41,

Motion to Dismiss, filed Jan. 24, 2024, at 2).[20] Nations Lending also points to its discovery

---

[18] Ms. Parris did not appear at the hearing held on March 7, 2024, on her Motion to Dismiss. The
Chapter 7 Trustee appeared and opposed the motion on the basis that assets were available for
possible liquidation to pay Ms. Parris's creditors. Counsel for the United States Trustee appeared
and asserted that the Motion to Dismiss should be denied for failure to prosecute. For the reasons
stated on the record and memorialized in the Court's order entered April 1, 2024, the Motion to
Dismiss was denied. ECF No. 57, Order Denying Debtor's Motion to Dismiss, entered Apr. 1,
2024.

[19] Nations Lending's discovery responses include copies of monthly loan statements it sent to Ms.
Parris beginning in February 2018 through December 2021, and from January 2023 through
December 2024. Nations Lending Document Production Responses, at 29-155, 159-225. The
initial statement indicates a total monthly payment amount of $1,412.77, comprised of principal
of $426.37 and interest of $986.40. *Id*. at 29.

[20] The monthly loan statement dated May 18, 2020, indicates Ms. Parris "agreed to a forbearance
plan," under which she did not have to make loan payments. *Id*. at 100. That statement also noted
that the payments due on April 1, 2020, and May 1, 2020, were unpaid. *Id*. The same or
substantially similar message appeared on the monthly loan statements issued between June 2020
to September 2021, with each statement containing a list of the six most recent unpaid payments
and the total amount of those unpaid payments. *Id*. at 104-43. The statement dated September 16,
2021, indicated an unpaid payment amount of $26,842.63 and that the loan had been in an unpaid
status for 533 days. *Id*. at 143. As noted in footnote 21, *infra*, Ms. Parris made a payment in October
2021 that Nations Lending applied to the April 2020 payment. *See id*. at 96, 145. The October 13,

14

responses, wherein it provided an itemization and explanation of the amounts needed to both

reinstate the loan to a current, paid status and repay the loan in full. *Id*. at 12 (citing Nations

Lending Document Production Responses, at 21-27).[21] The reinstatement amount to bring the loan

current as of January 14, 2025, was $70,672.57. Nations Lending Document Production

Responses, at 22; *see also* Exh. D (confirming via affidavit the reinstatement amount). The

reinstatement amount encompasses thirty-one (31) unpaid payments totaling $61,843.19;[22]

accrued late charges of $282.56; and corporate advances of $8,546.82.[23] Nations Lending

Document Production Responses, at 21-22. The itemized list of the missed payments indicates

that, as of January 14, 2025, Ms. Parris failed to make the payments between July 1, 2022, and

---

2021 statement noted a total deferred balance of $25,429.86. *Id*. at 145. The November 16, 2021
loan statement included the following message:

> Your post-forbearance deferment has been processed. A number of one-time
> transactions occurred during this process that are reflective within this statement.
> You will now see a Deferred Balance on your statement. This non-interest bearing
> balance is due and payable at the maturity of the mortgage loan, or earlier upon the
> sale or transfer of the property, refinance of the mortgage loan, or payoff of the
> interest-bearing unpaid principal balance.

*Id*. at 147. The Deferred Balance amount also appeared on subsequent statements. *See id*. at 159-
223.

[21] The monthly loan statements Nations Lending sent to Ms. Parris reflect that Ms. Parris began
making payments on the loan in March 2018. *Id*. at 29, 33. Ms. Parris generally made her mortgage
payments on time for the first two years of the loan. *See id*. at 29-96. Ms. Parris made no payments
beginning April 2020 through September 2021. *Id*. at 98-143. She resumed payments in October
2021, which payment was applied to the April 2020 payment. *Compare id*. at 96, *with id*. at 145
(indicating that the payment made in October 2021 was applied to principal and escrow in amounts
equal to those shown due for April 1, 2020). Ms. Parris's November 2021 payment was timely
paid and applied to the payment due for that month, and such payments continued to be paid and
applied through June 2022. *See id*. at 22-23, 147-53.

[22] This amount matches the unpaid amount set forth on the monthly loan statement dated December
16, 2024. *Id*. at 223.

[23] The monthly loan statement dated December 16, 2024, lists unpaid fees and charges totaling
$8,829.38, which comports with the total amount of the accrued late charges and corporate
advances indicated in the reinstatement quote. *Compare id.* at 22, *with id*. at 223.

January 1, 2025. Motion, at 12 (citing Nations Lending Document Production Responses, at 23).[24]

The payment amounts varied over time: $1,412.77 for July 1, 2022, through November 1, 2022; $2,181.27 for December 1, 2022, and January 1, 2023; $1,867.98 for February 1, 2023, through July 1, 2023; $1,861.71 in August 2023; $2,176.34 from September 1, 2023, through March 1, 2024; $2,203.59 from April 1, 2024, through June 1, 2024; and finally, $2,214.58 from July 1, 2024, through January 1, 2025.[25] Nations Lending Document Production Responses, at 23. Late charges of $70.64 each were assessed on four dates in 2022: July 18, August 16, September 16, and December 16. Motion, at 12-13 (citing Nations Lending Document Production Responses, at 23). The corporate advances consist of inspection fees of $200.00 (for eleven inspections between October 11, 2022, and October 16, 2023, with per inspection costs ranging from $15.00 to $30.00) and attorney fees and costs of $8,346.82. *Id*. (citing Nations Lending Document Production Responses, at 24). Attorney fees and costs were incurred between January 19, 2023, and October 6, 2023, related to title search fees, mailings, and foreclosure attempts. *Id*. (citing Nations Lending Document Production Responses, at 24). Nations Lending avers that all these fees are permitted and rightful under the Deed of Trust. *Id*. at 13 (citing Exh. B ¶¶ 9,14, 22, and 24).

---

[24] The itemized payment list appears to contain a typographical error in the year of the most recent missed payment, as it is lists such date as "1/1/2024." *Id*. at 23. However, the list already contained, in sequential order, a missed payment for January 1, 2024. As the payments are listed sequentially, the Court believes the second instance of January 1, 2024, was intended instead to be January 1, 202**5**, especially when reviewed together with the other discovery materials filed by Nations Lending as ordered by the Court.

[25] As explained *infra*, the monthly payment amount fluctuated because Ms. Parris failed to maintain her homeowner's insurance and property taxes as required by the Deed of Trust, causing Nations Lending to advance these amounts to protect its interest in the Property. Motion, at 13 (citing Exh. B ¶¶ 3-5).

The payoff amount on the loan was $351,936.45 of December 14, 2024, consisting of the aforementioned late charges and corporate advances; unpaid principal of $271,755.09;[26] accrued interest of $27,562.66; tax and insurance disbursements of $18,313.46; $25,429.86 in deferred payments resulting from the deferment during the COVID-19 pandemic;[27] and a $46.00 recording fee if the loan is paid in full. *Id*. at 12 (citing Nations Lending Document Production Responses, at 26-27; Exh. D (confirming via affidavit the payoff amount)). The payoff information delineates that Nations Lending paid the real estate taxes on the Property beginning September 26, 2022, and continuing quarterly through September 4, 2024. *Id*. at 13 (citing Nations Lending Document Production Responses, at 27, 163, 169, 181, 191, 198, 204, 212 (monthly loan statements noting the recited tax disbursements)); *see also* Nations Lending Document Production Responses, at 220 (December 16, 2024 monthly loan statement displaying additional real estate tax payment). Nations Lending also made two hazard insurance payments, on July 12, 2023, and May 9, 2024, in the amounts of $2,931.00 and $3,032.00, respectively. Motion, at 13 (citing Nations Lending Document Production Responses, at 27, 177, 204 (monthly loan statements noting said insurance payments)). Nations Lending explains that because Ms. Parris failed to pay her property taxes, Nations Lending created an escrow account in December 2022 to facilitate the reimbursement by Ms. Parris of the real estate tax payments (and later, hazard insurance payments) made by Nations Lending. *Id*.[28] The insurance and tax payments advanced by Nations Lending were in turn added to Ms. Parris's monthly payment in accordance with the Deed of Trust. *Id*. (citing Exh. B ¶¶ 3-5;

---

[26] This amount is also reflected on the December 16, 2024 loan statement. Nations Lending Document Production Responses, at 223.

[27] *See supra* n.20.

[28] Prior to December 2022, the monthly loan payment did not have an escrow component. *See* Nations Lending Document Production Responses, at 226 (answering interrogatory regarding with information concerning lender-purchased hazard insurance). The initial escrow component sought recoupment of unpaid real estate tax disbursements. *See id*. at 280.

Nations Lending Document Production Responses, at 227-83 (documentation sent to Ms. Parris regarding the cost and terms of lender-purchased hazard insurance policies in 2023 and 2024; Annual Escrow Account Disclosure Statement dated September 29, 2022, indicating (a) monthly payment increase from $1,412.77 to $2,181.27 effective December 1, 2022, due to the additions of (i) $392.55 for anticipated quarterly tax payments for December 2022 through September 2023 totaling $4,710.64 and (ii) $375.95 for "prorated shortage" to collect for tax payments made by Nations Lending for the period of September 2021 through November 2022 totaling $2,548.65 as well as to collect a prorated amount for the required beginning escrow balance of $1,962.79; (b) a list of tax disbursements made in September 2022 totaling $2,548.65; (c) a list of the projected tax disbursements for December 2022 and March, May, and September 2023 totaling $4,710.64: and (d) accompanying explanation regarding the escrow shortage)).

### C. Nations Lending's Argument Concerning Entitlement to Summary Judgment as to the Validity and Amount of Its Secured Claim

In support of the contention that applicable law entitles it to summary judgment based upon the asserted material facts, Nations Lending argues that the contents of the Deed of Trust are *prima facie* evidence of the existence and nature of the debt and the balance of the indebtedness, which Ms. Parris has failed to rebut in any of her pleadings beyond generalized accusations and speculation. *Id*. at 9-10. Nations Lending asserts that the Deed of Trust granting it a security interest in the Property was duly recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake. *Id*.; *see also id.* at 3. Nations Lending argues that the recorded Deed of Trust constitutes a judicial record and *prima facie* evidence of the contents therein pursuant to Virginia Code Ann. § 8.01-389(C). *Id*. at 10. The cited code section, Nations Lending contends, allows this Court to receive the factual recitals in the Deed of Trust as *prima facie* evidence of those facts, which here include the security interest and existence of indebtedness owed to it by Ms. Parris. *Id*.

(citing Exh. B, at 3 (defining Note within the Deed of Trust consistent with the description *supra*)).

Nations Lending further asserts that such *prima facie* status extends to other judicial records under

Virginia Code Ann. 8.01-389(D), including the Corporate Assignment of the Deed of Trust from

MERS to Nations Lending, as said assignment was recorded in the Chesapeake Circuit Court land

records. *Id*. (citing Exh. C). As a result of its showing of *prima facie* evidence of the existence of

its security interest and the indebtedness, Nations Lending argues that Ms. Parris has the burden

of rebutting the presumed result by producing credible evidence that the *prima facie* evidence is

erroneous or otherwise insufficient to satisfy the appropriate legal standard. *Id*. at 10-11 (quoting

*Whitt v. Ervin B. Davis & Co.*, 20 Va. App. 432, 438 (1995)). Nations Lending insists that Ms.

Parris has offered no such evidence, but rather, only unsupported, conclusory allegations and

accusations. *Id*. at 11, 13-14. Beyond its *prima facie* evidence argument, Nations Lending contends

that in her bankruptcy schedules and statements, as well as copies of letters to its CEO that she

voluntarily filed with the Court, Ms. Parris admitted to the existence of Nations Lending's secured

claim. *Id*. at 11. In doing so, it maintains that Federal Rule of Bankruptcy Procedure 9011(b) deems

Ms. Parris to have certified such factual statements are supported by evidence. *Id*.

As to the Note, Nations Lending asserts that the allonge thereto "becomes part of the [Note]

for the purpose of affixing endorsements," and that the blank endorsement thereon does not, under

Virginia law, divest it of its interest therein; rather, such endorsement permits the holder of the

Note to transfer or enforce it. *Id*. at 12 (quoting *Horvath v. Bank of New York, N.A.*, 641 F.3d 617,

621 (4th Cir. 2011)). As Nations Lending maintains physical possession of the Note (evidenced by

its counsel's attempt to permit Ms. Parris to view the original Note pursuant to this Court's order),

it remains the secured party here and is entitled to collect the indebtedness represented by it. *See*

*id*. at 8, 12, 14.

Finally, Nations Lending maintains Ms. Parris has failed to provide any evidence that she either does not owe the total amount claimed (including certain fees, charges, and recoverable amounts paid by Nations Lending to protect its secured status) or the amount needed to reinstate the loan to a current status is incorrect. *Id*. at 12-13. By contrast, Nations Lending has provided copious amounts of information and explanations regarding both amounts. *Id*. at 12. As such, Nations Lending requests the Court find it is entitled to judgment as a matter of law and enter summary judgment in its favor. *Id*. at 14.

### D. Ms. Parris's Opposition to Summary Judgment

### 1. The Original Note, Deed of Trust, and Related Documents

In opposition to the Motion for Summary Judgment, Ms. Parris argues that Nations Lending has not shown that it is the proper party to enforce the Note and Deed of Trust, absent the production of the original, wet signature documents, and the applicable law does not support judgment in favor of Nations Lending. Opposition, at 4-5, 7, 14-16. Ms. Parris asserts that many of the documents received from Nations Lending in response to her discovery requests (including mortgage statements, hazard insurance policy documents, and photocopies of the Deed of Trust and Note) are identical to documents already in her possession. *Id*. at 4. She further asserts, "Nations Lending Corporation does indeed have both original documents [the Note and the Deed of Trust] but they are merely photocopies from seven (7) years ago." *Id*. at 16. She additionally cites her several requests to Nations Lending seeking "proof of the debt" and that each time, she was either provided copies of documents already in her possession or otherwise denied the opportunity to view the original Note. *Id*. at 6 (citing Exh. B to Opposition, Letter from LoanCare

to Ms. Parris dated July 26, 2024).[29] Ms. Parris also references receipt of certain allonges and assignments. *Id*. at 5. She interprets a discovery response by Nations Lending ("The Allonge is an open assignment. The document speaks for itself.") as indicating Nations Lending does not possess the original Note and Deed of Trust. *Id*.; *see also id*. 13. Nonetheless, Ms. Parris reiterates her desire to view the original Deed of Trust and Note (or certified, authenticated copies in the alternative).[30] *Id*. at 5 (citing Exh. A to Opposition, Email correspondence from Ms. Parris to counsel for Nations Lending dated Jan. 17, 2025), 13-14. Ms. Parris acknowledges that the holder of a promissory note is entitled to enforce that note and that the "maker" of a promissory note is liable to the holder of that note. *Id*. at 15-16 (citing U.C.C. §§ 3-301, 3-412). In the context of certain discovery matters, Ms. Parris cites perceived problems with legalities of the Note and Deed of Trust (*id*. at 10-13), discussed in detail *infra*.

## 2. Allegations Concerning Undisputed Facts

Ms. Parris contests certain of Nations Lending's undisputed facts. *Id*. at 9-10. Ms. Parris disagrees that she was notified of the adjourned Section 341 meeting of creditors conducted in her case by the Chapter 7 Trustee on January 2, 2024. *Id*. at 9 (citing Motion, at 4; Exh. E to Opposition, Partial copy of letter from Chapter 7 Trustee to Ms. Parris dated Oct. 31, 2023). Ms. Parris disagrees that the hearing on her Motion to Compel was held on December 6, 2024, as noted in the Motion for Summary Judgment, and cites that the hearing was held December 5, 2024. *Id*. at 9-10 (citing Motion, at 7; Exh. F to Opposition, Notice of Hearing issued by Court regarding Dec. 5, 2024 hearing on Ms. Parris's Motion to Compel). Finally, Ms. Parris disagrees with Nations

---

[29] Contrary to its contents, the Opposition indicates Exhibit B is a letter Ms. Parris received from Nations Lending, not LoanCare. Opposition, at 6.
[30] As detailed in Section III, *infra*, Ms. Parris did review the original Note, Deed of Trust, and an allonge prior to the May 2, 2025 hearing on the Motion for Summary Judgment.

Lending's assertions that it filed supplemental discovery responses on January 16, 2025; that its

counsel appeared as ordered by this Court to permit Ms. Parris to review the original Note and

Deed of Trust; and that Ms. Parris did not appear to view the latter documents. *Id*. at 10 (citing

Motion, at 7-8). On the latter point, however, Ms. Parris indicates she could not appear to view the

documents because she did not have transportation. *Id*. Ms. Parris does not indicate the grounds

for her disagreement with the date of the filing of discovery responses or the appearance of counsel

for Nations Lending to allow Ms. Parris to view the original Deed of Trust and Note.

3. Incomplete Discovery

Ms. Parris contends that material facts remain in dispute because questions she posed

during discovery "have not been completely answered," thus making discovery incomplete. *Id*. at

7, 16. Ms. Parris recounts the discovery process and ensuing disputes. *Id*. at 7-9 (citing Exh. C to

Opposition, Email correspondence from Ms. Parris to counsel for Nations Lending dated Nov. 15,

2024; Exh. D to Opposition, Email correspondence from Ms. Parris to counsel for Nations Lending

dated Nov. 16, 2024). She further indicates her disagreement with the Court's ruling on her Motion

to Compel, in which the Court ordered that the original loan closing documents for the transaction

at issue could be produced in the form of certified copies if the original documents did not exist.

*Id*. at 9 (referencing ECF No. 104, at 3).[31]

Ms. Parris cites eleven (11) discovery responses by Nations Lending as support for her

discovery-related argument. *See id*. at 10-14. Ms. Parris propounded interrogatories concerning

whether the Note is a security and who holds and owns both the Note and the Deed of Trust. *Id*. at

10-13. In response, Nations Lending denied that the Note is a security and represented instead that

---

[31] Ms. Parris did not, at any point, request the Court reconsider or otherwise revisit its ruling on
her Motion to Compel, nor did she file any additional discovery-related motions or objections.

it is a bearer Note and instrument, which it holds. *Id*. at 10, 12-13. Nations Lending objected to the

Deed of Trust-related inquiries on the basis that deeds of trust are neither owned nor held and are

not bearer instruments, but rather, have beneficiaries thereunder. *Id*. at 11-12. Ms. Parris contends

that a "Bearer Note" is an "outlawed" instrument, and ownership of such instruments is

unrecorded. *Id*. at 10-11 (citing Exh. G to Opposition, undated printout purportedly from

*Wikipedia.com* concerning bearer bonds and bearer notes; Exh. H to Opposition, undated printout

purportedly from *Investopedia.com* titled, "Bearer Bond: Definition, How It Works, and Why

They're Valuable;" Exh. I to Opposition, undated printout purportedly from *Investopedia.com*

titled, "Bearer Instrument: What it is, How it Works"); *see also id.* at 15 (citing 15 U.S.C. §

78c(a)(10) for definition of "security"). Further, Ms. Parris believes Nations Lending's answers

contradict the Definitions section of the Deed of Trust, which she partially exhibits with her

Opposition. *Id*. at 12 (citing Exh. J to Opposition, Deed of Trust pg. 1). Ms. Parris also believes

her interrogatory concerning the consideration Nations Lending received for the loan was

unanswered. *Id*. at 14. Nations Lending did respond, however, and indicated that it "funded the

loan to [Ms. Parris]. The signed Note acknowledges consideration." *Id*.

Ms. Parris takes issue with several discovery requests regarding her ongoing desire to view

the physical, original version of the Note and Deed of Trust or in the alternative, to be provided

with "certified authenticated copies." *Id*. at 13, 15. She rejects the usage of photocopies of

documents from the original closing package and believes that the original documents do not exist.

*Id*. at 14, 15, 16. In an interrogatory addressing this topic, Nations Lending recounted the prior

provision of copies of both documents; the ability to view the documents in the circuit court land

records; and the method by which Ms. Parris could request and view the original documents. *Id*.

at 14; *see also id*. at 5.[32]

Ms. Parris dually asserts that her interrogatory concerning the security instrument status of

her loan was not answered and that Nations Lending's indication that the loan has neither been

assigned, sold, or securitized contradicts her apparent understanding of the purpose of an allonge.

*Id*. at 11 (citing Exh. K to Opposition, undated and unsourced printout titled, "Allonge: What it

Means in Banking, Examples"). Nations Lending points out in an interrogatory response that the

allonge was not included in her closing documents because such document "may not have been

available at closing" and elaborates that such documents do not require the review or authority of

a deed of trust grantor. *Id*. at 13. Ms. Parris contends, however, that such interrogatory was not

answered. *Id*.

Finally, Ms. Parris contends her interrogatory about LoanCare's interest in the Property and

its ability to initiate a foreclosure through Nations Lending's counsel was not answered, even

though Nations Lending indicates LoanCare is a sub-servicer acting on behalf of Nations Lending.

*Id*. at 12. Ms. Parris argues that Nations Lending's denial of the securitization status of either the

Deed of Trust and/or Note contradicts her understanding of a "bearer note." *Id*. at 13 (citing Exh.

K to Opposition); *see also id*. at 15 (citing Exh. H to Opposition).

Ms. Parris concludes her pleading by making several requests. *Id*. at 16. In addition to

denying summary judgment, Ms. Parris asks to proceed to an evidentiary hearing and require

production of the original Note and Deed of Trust. *Id*. at 16. She also demands that the Court order

---

[32] As detailed in Section III, *infra*, Ms. Parris reviewed the original Note, Deed of Trust, and an allonge prior to the May 2, 2025 hearing on the Motion for Summary Judgment.

Nations Lending to explain the "legitimacy and legality of the 'Bearer Note'" and to dismiss Nations Lending "as a legitimate creditor with prejudice[.]" *Id*. at 16-17.

### E. Ms. Parris's Supplemental Opposition

Less than one (1) hour prior to the commencement of the May 2, 2025 hearing on the Motion for Summary Judgment, the Debtor filed a pleading entitled, "Amended Motion for Dismissal of Nations Lending Corporation's Motion for Summary Judgment and Request for Jury Trial" and accompanying exhibits.[33] ECF No. 139. The majority of Ms. Parris's pleading (hereinafter referred to as "Supplemental Opposition") addresses her arguments in support of denying the Motion for Summary Judgment. *See generally id*. Additionally, for the first time in these proceedings, Ms. Parris requested a jury trial. *Id*. at 8. The Court addressed and denied the jury trial request by order entered June 24, 2025. ECF No. 146, Order Denying Request for Jury Trial. As indicated therein, the Court now considers the remainder of the contents of the Supplemental Opposition in the context of the instant adjudication. *Id*. at 12 n.7.

### 1. Nations Lending's Ability to Enforce the Note and Deed of Trust

The Supplemental Opposition asserts several additional bases for denying summary judgment, in addition to repeating a portion of the discovery-related arguments from the original Opposition.[34] *See* ECF No. 139, at 5-6. Consistent with her original Opposition, Ms. Parris argues that Nations Lending has failed to prove it is entitled to enforce the Note and Deed of Trust. *Id*. at 2, 5-7, 8. On this topic, Ms. Parris offers several arguments. First, she contends that Nations

---

[33] The Debtor filed, in person in the Clerk's Office of this Court, the original version of the pleading (ECF No. 138) and immediately thereafter filed an amended version to include a certificate of service (ECF No. 139). The Court received a copy of the original version of the pleading by mail on May 5, 2025. ECF No. 141. Counsel for Nations Lending confirmed at the hearing on the Motion for Summary Judgment that she did not receive the May 2, 2025 pleading until shortly before the commencement of the hearing that day. May 2, 2025 Tr., at 14.

[34] Ms. Parris's duplicative arguments will not be repeated here.

Lending has not filed a formal proof of claim because it sold the Note and Deed of Trust several

times as a security and is "collecting credits and not paying taxes on all the money they've made

off of that security." *Id*. at 2, 3. Second, Ms. Parris asserts that Nations Lending has failed to show

it possesses the original "wet-signature" "properly-negotiated promissory note" to prove its ability

to foreclose on the Property pursuant to the Uniform Commercial Code. *Id*. at 5 (citing U.C.C. §§

3-301, 3-309, 3-412); *see also id*. at 6-7 (citing *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) for

the proposition that "the note and mortgage [are] inseparable" and "the assignment of the note

carries the mortgage with it, while an assignment of the latter alone is a nullity"), 8 (asserting that

the Court erroneously ruled on discovery matters related to the provision of copies of the Note and

Deed of Trust at the December 5, 2024 hearing, as memorialized in its December 18, 2024 order

at ECF No. 104).[35] Taking this proposition a step further, Ms. Parris argues that MERS takes

possession of mortgages electronically (versus possessing a hard copy of the documents) to

facilitate the sale, purchase, and assignment processes thereof, leading her to conclude that Nations

Lending should possess the original Deed of Trust she signed. *Id*. at 6-7 (citing Exh. C, undated

printout purportedly from *Nolo.com* concerning the role of MERS in the assignment process). In

reference to Nations Lending's interrogatory response that deeds of trust are not owned, but rather,

it is the beneficiary thereunder, Ms. Parris cites a printout purportedly from the Freddie Mac

---

[35] Ms. Parris indicates that this Court ruled at the December 5, 2024 hearing on her Motion to Compel that "copies of the original wet-signature Note and Deed of Trust are acceptable and [Nations Lending] can indeed foreclose on [Ms. Parris's] [P]roperty under a mortgage contract that does not meet lawful requirements[.]" Such characterization misconstrues and misstates the Court's ruling. *See* Dec. 18, 2024 Order, at 3 (ruling that copies of certain closing documents could be provided to Ms. Parris for discovery purposes if the original documents were not available), 10 (ordering counsel for Nations Lending to provide Ms. Parris with copies of all original documents to be produced for inspection on January 16, 2025). To the extent that Ms. Parris is asking for reconsideration of any portion of the ruling on her Motion to Compel, such request would be denied, as she has shown no cognizable basis for doing so.

website asserting that Freddie Mac owns her mortgage. *Id*. at 6 (citing Exh. D, undated printout purportedly from *FreddieMac.com* indicating the mortgage for the Property is owned by Freddie Mac). Finally, she questions ownership of the allonges to the Note and assignments of the Deed of Trust and proclaims she would not have entered into the loan transaction if an allonge had been included in her closing documents. *Id*. at 5.

## 2. Violations of Various Laws

Ms. Parris further asserts that Nations Lending is not entitled to summary judgment due to its violation of various laws as they pertain to its transaction with her. *See id.* at 4, 5, 7-8. First, Ms. Parris believes Nations Lending's collection of payments on the Note violates federal law because it is a "Foreign Business Corporation" that cannot transact with either the general public or within the United States. *Id*. at 3-4 (citing Exh. A, undated printout purportedly from *newyork-company.com*).[36] As a result, she disputes the legality of Nations Lending's collection of payments from her. *Id*. at 4. She next maintains that the documents at issue do not constitute a contract because they were signed only by her; no one signed them on behalf of Nations Lending. *Id*. at 7. Ms. Parris also contends that she "unknowingly signed fraudulently because [Nations Lending] failed to disclose that the mortgage contract is a 'security.' Under 15 U.S. Code § 78c, the

---

[36] The Supplemental Opposition cites "Kirschner v. JP Morgan Chase (2023)" and "U.S.C. 12 § 623" in support of this proposition. ECF No. 139, at 4. The Court believes Ms. Parris may be referencing a case decided by the United States Court of Appeals by the Second Circuit in 2023, reported at 79 F.4th 290. That case contains no reference to Nations Lending or to the subservicer, LoanCare, and thus appears to be inapplicable. *See generally Kirschner v. JP Morgan Chase Bank, N.A.*, 79 F.4th 290 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 818 (2024). As to the statute, the Court believes Ms. Parris's reference may be to 12 U.S.C. § 632, entitled, "Jurisdiction of United States courts; disposition by banks of foreign owned property." The text of this code section likewise has no applicability to the matters here.

promissory note is a security. It is not a promissory note." *Id*.[37] Additionally, while citing no authority, Ms. Parris argues that promissory notes have a maximum nine (9) month term, and that thirty-year term of the Note here exceeds such time limit.[38] *Id*. Finally, Ms. Parris argues that Nations Lending failed to disclose that her promissory note is in reality a security, which both constitutes fraud and violates Regulation Z of the Truth in Lending Act and 12 C.F.R. § 226.23 so as to permit her to rescind the transaction. *Id*. at 7-8.

### 3. Discovery-related Dispute

Ms. Parris raises a discovery-related concern focused on her interrogatory about the relation of "NY Mellon Trust Company" to her loan and Nations Lending's indication that such entity serves as a document depository. *Id*. at 6. Disputing Nations Lending's response, Ms. Parris cites a purported bankruptcy filing by Bank of NY Mellon Trust in the United States Bankruptcy Court for the District of Delaware in 2024. *Id*. (citing Exh. B, undated printout purportedly from *BankruptcyObserver.com*).[39] Ms. Parris makes no further assertion as to why this seeming disagreement bears upon the adjudication of the Motion for Summary Judgment.

---

[37] The cited United States Code section sets forth definitions for the Securities Exchange Act of 1934, as amended. *See* 15 U.S.C. §§ 78a, 78c. Ms. Parris may be referencing the definition for "mortgage related security," which, for the reasons stated in n.59, *infra*, does not apply to the instant matter.

[38] Although not cited with this specific argument, in her Opposition Ms. Parris cites 15 U.S.C. § 78c(a)(10) for definition of "security," which may be the source of this argument. As with the definition of "mortgage related security," the definition of "security" does not apply to the instant matter for the reasons stated in n.59, *infra*.

[39] For clarity of the record, an involuntary Chapter 7 petition was filed against the Bank of New York Mellon Trust on March 14, 2024, in the United States Bankruptcy Court for the District of Delaware, designated as Case No. 24-10409-TMH. The case was dismissed on April 2, 2024, upon the Court's finding that the bank was not eligible to be a debtor under 11 U.S.C. § 109(b)(2); the involuntary petition was not properly signed, in violation of Federal Rule of Bankruptcy Procedure 9011(a); the required claim and creditor thresholds under 11 U.S.C. § 303(b)(1)-(2) were not met; and most importantly, that the involuntary petition was filed in bad faith. *See* Case No. 24-10409-TMH, ECF No. 14, Order (I) Dismissing Involuntary Petition as Bad Faith Filing and (II) Awarding

4. The Loan Balance

Ms. Parris further contests Nations Lending's claim that it loaned her the principal sum of

$295,920.00, countering instead that her "signature created the 'loan.'" *Id*. at 2, 4, 5; *see also id*.

at 7 (asserting that Nations Lending has not proven it provided consideration in the transaction at

issue), 8 (citing U.C.C. § 8-102 for the proposition that the maker of a promissory note is entitled

to know the funding source of a loan). She contends that Nations Lending could prove the existence

of consideration for the loan transaction by exhibiting the check from 2018. *Id*. at 6. Ms. Parris

admits receiving a copy of Nations Lending's ledger for her loan indicating its inception, although

she hypothesizes that "[a]nyone can put figures on a ledger page." *Id*.

On the topic of the loan balance, Ms. Parris admits accepting Nations Lending's offer to

defer her monthly loan payments due to the COVID-19 pandemic, although she believes the

deferment encompassed seventeen (17) payments for a total deferred amount of $24,017.09, versus

Nations Lending's record of an eighteen (18) month deferment totaling $25,429.86, while offering

no substantiating documentation. *Id*. at 3. She represents she refused to enter into a loan

modification agreement for the deferred amount because she did not wish to extend her loan term

by ten (10) years. *Id*. Finally, she references Exhibit H tendered by Nations Lending to the Court

for the evidentiary hearing on the Motion to Determine Secured Status, which exhibit sets forth

Nations Lending's itemization of the total balance due of $351,946.55 as of December 14, 2024.

*Id*. She advocates that such amount is incorrect because the balance due on July 1, 2022, was

$271,755.09, though offers no support for contesting Nations Lending's argument. *Id*.

---

Attorneys' Fees and Punitive Damages, entered Apr. 2, 2024, by the United States Bankruptcy
Court for the District of Delaware.

## III. ARGUMENTS MADE AT THE HEARING ON THE
## MOTION FOR SUMMARY JUDGMENT AND PLEADINGS FILED THEREAFTER

### A. Arguments at Summary Judgment Hearing

Counsel for Nations Lending prefaced her argument by advising the Court that Ms. Parris viewed the original Note, Deed of Trust, and allonge, all of which exhibited the original, wet signatures.[40] May 2, 2025 Transcript (hereinafter, Tr.) at 2; *see also id*. at 3, 10. Counsel also provided certified copies of the documents to Ms. Parris. *Id*. at 10.

Substantively, Nations Lending's counsel primarily reiterated the material facts and arguments set forth in the Motion for Summary Judgment. *See id*. at 3-9, 11. Nations Lending further cites Virginia Code Ann. § 8.3A-201(b) as support for its position that negotiable instruments endorsed in blank may be transferred by possession alone. *Id*. at 7, 13. Counsel for Nations Lending recounted the discovery and procedural-related topics in Ms. Parris's Opposition and contended that such arguments were not responsive to the adjudication of the instant motion. *Id*. at 9-10, 11, 12. Similarly, counsel maintained that Ms. Parris raised no objection to the material facts set forth in the motion; rather, she disputed only certain procedural facts that have no bearing on the summary judgment issues. *Id*. at 11. Nations Lending countered Ms. Parris's misstatements of the law regarding bearer-type instruments and offers that Ms. Parris has provided irrelevant information concerning same. *Id*. at 12. Finally, Nations Lending contended that Ms. Parris has attempted to create factual disputes by failing to review and accept certified documents, formulating unfounded opinions, and generally refusing to participate in the litigation process. *Id*. at 11, 13.

---

[40] After viewing the enumerated original documents, Ms. Parris remained in the courtroom until shortly before the hearing commenced, at which time she voluntarily left the courtroom and did not indicate an intent to return. Tr. at 2. She returned approximately five (5) minutes after the Court convened the hearing. *See id*. at 2, 5.

Ms. Parris admitted on the record at the hearing that she reviewed the original Deed of Trust and Note prior to the summary judgment hearing. *Id*. at 15. She asserted that she wished to redeem her "birth certificate trust" to access certain funds held in bonds[41] by either the Social Security Administration or the United States Treasury and use those funds to pay her creditors. *Id*. at 15-16; *see also id*. at 18, 19. Ms. Parris additionally questioned the role of Freddie Mac in her loan transaction, as well as the purpose of the allonges and assignments. *Id*. at 16. Finally, Ms. Parris reiterated the argument made in her Supplemental Opposition concerning Nations Lending's alleged foreign entity status and its ability to transact with American citizens. *Id*. at 19.

In rebuttal, counsel emphasized that Nations Lending has held the Note since its 2018 inception. *Id*. at 17. Counsel represented that while an allonge with a blank endorsement was attached to the Note after closing, it has not been used to effectuate the transfer of the Note to another holder. *Id*. Nations Lending's counsel further indicated that the Deed of Trust, while being assigned for a period to MERS, was assigned back to Nations Lending when the latter initiated foreclosure proceedings, and all required documents were properly recorded in the Circuit Court of the City of Chesapeake, Virginia. *Id*. Finally, counsel for Nations Lending argued that the Court should afford no merit to Ms. Parris's contention that certain bonds existed that are payable via her birth certificate, as this argument has been refuted by numerous courts. *Id*. at 18.

### B. Nations Lending's Post-Hearing Pleading

As permitted by the Court at the May 2, 2025 hearing, Nations Lending, by counsel, timely filed a response to the Supplemental Opposition on May 14, 2025. ECF No. 142. Nations Lending argues that the Supplemental Opposition was not timely filed because the deadline to respond to

---

[41] Ms. Parris denied listing any bonds on her bankruptcy schedules, indicating, "I didn't think that would come up because I didn't believe [Nations Lending] had the original deed of trust and the note." Tr. at 16.

the Motion for Summary Judgment was February 13, 2025. *Id*. at 2, 3. As the Debtor earlier filed

a timely response to its Motion for Summary Judgment, Nations Lending asserts that the Debtor

was not denied an opportunity to respond to the motion. *Id*.[42]

### C. Ms. Parris's Reply

Ms. Parris's May 28, 2025 reply largely reiterates her earlier arguments that Nations

Lending has not demonstrated its entitlement to enforce the Note and Deed of Trust and that certain

discovery requests were unanswered. *See* ECF No. 143. Ms. Parris alleges that Nations Lending's

discovery responses conflict with information she has purportedly learned and presented to the

Court. *Id*. at 2. Ms. Parris notes that counsel for Nations Lending "presented [her] with colored

copies of a Note and Deed of Trust. [I] cannot confirm or deny if either document was the original

wet-signature documents [*sic*]. Neither document that [I] saw was marked as a 'Certified Copy' as

requested by this court in the February 25, 2025 Order."[43] *Id*. Ms. Parris provides her account of a

conversation with counsel for Nations Lending just prior to the commencement of the May 2, 2025

hearing on the Motion for Summary Judgment in which Ms. Parris allegedly stated, "Freddie Mac

owns the mortgage[,]" and questioned Nations Lending's involvement in the loan transaction. *Id*.

Ms. Parris indicates that counsel for Nations Lending responded, in reference to Freddie Mac,

"They are the investor." *Id*. When Ms. Parris asked the meaning of such statement, counsel for

---

[42] The remainder of Nations Lending's response focused on the timeliness of Ms. Parris's jury trial request, which the Court addressed in its June 24, 2025 order. ECF No. 146, Order Denying Request for Jury Trial.

[43] The Court's February 25, 2025 order, entitled "Order (1) Granting Debtor's Motion to Continue Hearing on Nations Lending Corporation's Motion for Summary Judgment; (2) Continuing Hearing to March 11, 2025, at 10:00 a.m.; (3) Ordering Counsel for Nations Lending to Advise Debtor of Continued Hearing Date; and (4) Ordering Debtor to Appear In Person on March 11, 2025, at 10:00 a.m." did not address any topics related to document production, except to remind the parties that the deadlines in the Amended Order Establishing Deadlines entered December 18, 2024 (ECF No. 105), would remain in effect.

Nations Lending did not respond. *Id*. Finally, Ms. Parris asks that the information she has provided

to the Court be given "special consideration," and prays for several rulings by the Court, including

dismissing Nations Lending's claim with prejudice unless "proven beyond a reasonable doubt;"

ordering additional discovery responses; and ordering "a complete mortgage audit . . . by an

accredited and certified forensic auditor . . . ." *Id*. at 3-4.[44]

IV. CONCLUSIONS OF LAW

A. Standing

As explained above, the Court treated Ms. Parris's pleading as a Motion to Determine

Secured Status regarding the claim of Nations Lending.[45] To adjudicate such matter, the Court

must determine whether Nations Lending holds a claim, and if so, whether such claim is secured.[46]

---

[44] The remainder of Ms. Parris's reply addresses her earlier jury trial request, which is the subject of the Court's June 24, 2025 order. ECF No. 146.

[45] To the extent that such matter should have been brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(b), the requirements of due process as well as the formalities of the adversary process have all been observed here, and the administration of justice has not been impacted. Both parties have fully participated in the proceedings since their inception, filed various pleadings, and were permitted the opportunity to conduct discovery and submit motions. Indeed, the Court's Order Establishing Deadlines contained substantially similar provisions to those set forth in this Court's standard pre-trial order routinely entered in adversary proceedings. Accordingly, as detailed above in the procedural history, no prejudice has befallen the parties, as they have been "afforded all desired procedural protections that would otherwise be applicable in an adversary proceeding, and . . . given a full and fair opportunity to address all of the issues presented." *In re Tommy's Fort Worth, LLC*, Case No. 24-90000, 2025 WL 1476986, at *11 (Bankr. N.D. Tex. May 22, 2025).

[46] Nations Lending has not filed a proof of claim. Nonetheless, to the extent Nations Lending in fact holds a secured claim, filing a proof of claim is unnecessary to assert such secured position. *See HSBC Bank USA, Nat'l Ass'n v. Blendheim* (*In re Blendheim*), 803 F.3d 477, 485 (9th Cir. 2015); *Hamlett v. Amsouth Bank* (*In re Hamlett*), 322 F.3d 342, 349-50 (4th Cir. 2003). A secured claim and the corresponding lien survive the bankruptcy discharge unaffected, as the "discharge extinguishes only 'the personal liability of the debtor.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting 11 U.S.C. § 524(a)(1)); *see* 11 U.S.C. §§ 506(d)(2), 522(c)(2), 524(a)(1); *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). Further, the failure to file a proof of claim would not prevent Nations Lending from receiving funds in satisfaction of its lien should the Chapter 7 Trustee administer and liquidate the Property for the benefit of the bankruptcy estate.

Ms. Parris also contests the amount of any claim that does exist in favor of Nations Lending (although her challenges in this regard are broadly stated). Nations Lending has not challenged Ms. Parris's standing in this proceeding. However, it remains incumbent upon the Court to decide at the outset if Ms. Parris has standing here since, if she lacks standing, this Court likewise lacks subject matter jurisdiction in this proceeding and need not reach the merits of the Motion for Summary Judgment. *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011); *Yarid v. Ocwen Loan Serv'g*, Civil Action No. 3:17-cv-484, 2018 WL 3631883, at *2 (E.D. Va. July 31, 2018) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001); citing *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006) (per curiam) (unpublished decision)).

An insolvent debtor generally cannot establish standing due to the lack of pecuniary interest in the assets to be liquidated and distributed; in other words, where there are no residual estate funds for the debtor, the debtor cannot challenge the orderly administration of property of the bankruptcy estate by a trustee. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003); *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985) (quoting *Kapp v. Naturelle, Inc.* (*In re Kapp*), 611 F.2d 703, 706-07 (8th Cir. 1979)); *Vaughn v. Gold*, No. 1:25-cv-00217, 2025 WL 1650041, at *4 (E.D. Va. June 10, 2025) (citing *Willemain*, 764 F.2d at 1022). Conversely, if there is a reasonable possibility that a surplus of assets could inure to the debtor, the debtor has standing to contest claims made in their case. *White v. Univision of Va., Inc.* (*In re Urban Broad. Corp.*), 401 F.3d 236, 243-44 (4th Cir. 2005) (citing *United States Trustee v. Clark* (*In re Clark*), 927 F.2d 793, 795 (4th Cir. 1991)); *Robb v. Harder* (*In re Robb*), 534 B.R. 354, 357 (B.A.P. 8th Cir. 2015); *Vaughn*, 2025 WL 1650041, at *4 (citing *McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996)).

Ms. Parris's bankruptcy schedules, filed under the penalty of perjury and uncontroverted by the record of her case, suggest there may be residual funds for her benefit after the payment of creditor claims. Ms. Parris valued the Property at $545,900.00 on her bankruptcy schedules. ECF No. 1, Chapter 7 Voluntary Petition and related documents, at 11 (Schedule A/B). She listed the disputed Nations Lending claim as the only secured claim on the Property, in the amount of $271,755.09. *Id*. at 23 (Schedule D). She also listed priority and general unsecured debt totaling $85,537.05.[47] *Id*. at 25-31 (Schedule E/F).[48] The Chapter 7 Trustee has concluded that there may be assets available for distribution to creditors. *See* ECF No. 30, Trustee Request for Asset Notice, filed Jan. 4, 2024. Claims totaling $96,856.75 were filed before the April 5, 2024 claims bar date; $10,410.81 of those claims assert priority status.[49] The Court must presume that Ms. Parris's scheduled value of the Property is accurate, given that the schedules and other required bankruptcy documents were attested to as true and correct and filed by Ms. Parris under the penalty of perjury. *See* ECF No. 1, at 40 (Declaration About an Individual Debtor's Schedules). As the value of the Property exceeds that total claims asserted (both through formal proofs of claim and Nations Lending's secured claim), the Court finds that Ms. Parris may be entitled to a residual amount of proceeds in the event the Property is liquidated.

If Nations Lending does not hold a valid claim against the Property, Ms. Parris's total liabilities will be reduced, and based upon the record currently before the Court, it is reasonable to presume there will be residual funds for her benefit from the liquidation of the Property of the Chapter 7 estate. In the alternative, the Chapter 7 Trustee, in the fulfillment of his statutory and

---

[47] Schedule E/F and the Summary of Assets and Liabilities incorrectly list the total amount of priority and general unsecured claims as $85,536.88. ECF No. 1, at 9 (Summary of Assets and Liabilities), 32 (Schedule E/F).

[48] *See* n.17, *supra*, for the unsecured debts listed by Ms. Parris in her bankruptcy schedules.

[49] *See* n.3, *supra*, for a list of claims filed in the instant case.

fiduciary duties, may pursue other avenue(s) or agreement(s) with Ms. Parris to provide a

distribution to creditors. Such result is neither speculative nor remote and would provide Ms. Parris

with a direct financial benefit. *See Dandridge v. Scott*, Civil Action No. 3:18CV00051, 2019 WL

4228457, at *2 (W.D. Va. Sept. 5, 2019) (citing *McGuirl*, 86 F.3d at 1235-36) (finding standing

could not be shown where potential pecuniary benefit was speculative and contingent); *In re

Miller*, No. RWT 10cv2466, 2011 WL 3758712, at *3-4 (D. Md. Aug. 24, 2011) (declining to

conclude standing existed to appeal based upon speculative and remote possibility of pecuniary

benefit to appellant); *Peyton v. Keefe* (*In re Keefe*), Adv. No. 09-1008, 2010 WL 1417796, at *2

n.4 (Bankr. E.D. Va. Apr. 2, 2010) (finding that debtor had standing to be heard on trustee's motion

to sell a co-owner's interest in estate property because the alternative relief requested—the sale of

the debtor's interest to the co-owner—could yield a surplus to the debtor); *In re Payne*, No. CIV.

A. 95-8343-W, 1996 WL 33340789, at *1 (Bankr. D.S.C. June 5, 1996) (concluding the debtor had

standing to object to trustee's motion to estimate claim because unsecured creditors would likely

receive a 100% distribution).[50] For these reasons, the Court determines that Ms. Parris has standing

to pursue the underlying substantive motion, and thus, the Court has jurisdiction to adjudicate the

pending Motion for Summary Judgment.

B. The Standard for Adjudication of a Motion for Summary Judgment

Summary judgment proceedings are governed by Federal Rule of Bankruptcy Procedure

7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. The Court must measure

a motion for summary judgment by the standards established by the United States Supreme Court

---

[50] Where courts are uncertain as to whether a particular party will be economically impacted such
that their standing is questioned, the more cautionary approach is taken, and the matter is decided
on the merits. *See, e.g.*, *In re Visiting Nurse Ass'n*, 176 B.R. 748, 751 (Bankr. E.D. Pa. 1995) (citing
*Nassau Sav. & Loan Ass'n v. Miller* (*In re Gulph Woods Corp.*), 116 B.R. 423, 430 (Bankr. E.D.
Pa. 1990)).

and the United States Court of Appeals for the Fourth Circuit. "Summary judgment is appropriate if, 'viewing the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party, . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]'" *Anderson v. Diamondback Invest. Grp., LLC*, 117 F.4th 165, 173 (4th Cir. 2024) (quoting Fed. R. Civ. P. 56(a); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)). "A fact is 'material' if proof of its existence or non-existence would affect the disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Irrelevant or unnecessary facts or factual disputes, as determined by the applicable substantive law, will not preclude summary judgment. *Anderson*, 477 U.S. at 248. The party seeking summary judgment bears the initial burden of showing entitlement to summary judgment by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (referencing Fed. R. Civ. P. 56(c)). Such showing must be made by a preponderance of the evidence. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *Stancill v. Harford Sands Inc.* (*In re Harford Sands Inc.*), 372 F.3d 637, 641 (4th Cir. 2004) (finding that the validity and amount of a claim must be proven by a preponderance of the evidence).

Once the movant has made the threshold demonstration that no genuine issue of material fact exists, the nonmoving party must "go beyond the pleadings" and designate specific, material

facts in the form of admissible evidence "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file'" that give rise to a genuine issue as to an essential element of the controversy to survive the motion for summary judgment. *Celotex Corp.*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). Under this standard, "[t]he mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion, as are speculations and "'the building of one inference upon another.'" *Anderson*, 477 U.S. at 252; *Humphreys & Partners Architects, L.P. v Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *DeLuca v. Atl. Refin. Co.*, 176 F.3d 421, 423 (2nd Cir. 1949)) (finding that it is insufficient "to show that there is some metaphysical doubt as to the material facts"). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037 (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). "[T]he nonmoving party may also 'show[] that the materials cited do not establish the absence . . . of a genuine dispute.'" *Anderson*, 117 F.4th at 174 (alteration in original) (quoting Fed. R. Civ. P. 56(c)(1)(B)). "If the nonmoving party fails to establish a triable issue of fact 'on an essential element of her case with respect to which she has the burden of proof,' '[t]he moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting *Celotex*, 477 U.S. at 323).

To be sure, "[s]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright *et al*., Federal Practice

& Procedure § 2728 (3d ed. 1998)). "'[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations.'" *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores*, 888 F.3d at 659). Further, the court must give credit to "evidence that contradicts its factual conclusions" and may "draw reasonable inferences in the light most favorable to the nonmoving party." *Id*. (quoting *Variety Stores*, 888 F.3d at 659-60). However, "those inferences must . . . fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Advert. L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817-18 (4th Cir. 1995)). Finally, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Thus, Rule 56 does not require the court "'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Carter v. McCoy*, Civil Action No. 3:24cv136, 2025 WL 1870798, at *2 (E.D. Va. July 7, 2025) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Whether to examine uncited portions of the record is within a court's discretion. *Tuggles v. United States*, Case No. 1:18CV97, 2020 WL 3036601, at *2 n.4 (M.D.N.C. June 6, 2020) (citing *Torry v. City of Chicago*, 932 F.3d 579, 584 (7th Cir. 2019); *Gemini Ins. Co. v. Earth Treks, Inc.*, 728 F. App'x 182, 185 (4th Cir. 2018) (per curiam) (unpublished decision)) (concluding that Rule 56(c)(3) permits, but does not require, consideration of other evidence in the case record when adjudicating summary judgment).

C. The Standard for Interpreting Pleadings Filed by *Pro Se* Litigants

In the present case, Ms. Parris is proceeding *pro se*. Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court is charged with

liberally construing pleadings filed by *pro se* litigants to allow for the development of a potentially meritorious claim. *Id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1152-53 (4th Cir. 1978). Such leniency in construction and interpretation is not without bounds, however, and courts are not required to engaged in extraordinary efforts to construct "'obscure or extravagant claims.'" *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 290 (4th Cir. 2013) (per curiam) (unpublished decision) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985)). Accordingly, the Court should not ignore clear defects in *pro se* pleadings or become an advocate for a *pro se* party. *Id.* at 290-91; *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Newkirk v. Cir. Ct. of the City of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014). Further, *pro se* parties are expected to comply with applicable procedural rules and deadlines and to allege facts and arguments that set forth a cognizable claim or defense. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *United States v. Beckton*, 740 F.3d 303, 306 (4th Cir. 2014); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (quoting *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md.), *aff'd*, 103 F.3d 120 (4th Cir. 1996)). The Court will thus construe the contents of Ms. Parris's pleadings according to these guiding principles.

### D. Is Nations Lending Entitled to Summary Judgment?

#### 1. Validity of Nations Lending's Secured Claim

##### a. Applicable Law

Whether Nations Lending has demonstrated there is no genuine issue as to any material fact that it holds a valid secured claim against, and is thus a creditor of, Ms. Parris requires the Court to examine the requirements for such claim under both the Bankruptcy Code and state law. "Creditor" is defined by the Bankruptcy Code as an "entity that has a claim against the debtor that

arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A).

A "claim" is the "right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

secured, or unsecured[.]" *Id*. § 101(5)(A). Whether Nations Lending has a right to payment— *i.e.*,

is the appropriate party to enforce the Note and Deed of Trust—is determined by state law as the

applicable law that determines rights pertaining to property. *Butner v. United States*, 440 U.S. 48,

55 (1979) ("Property interests are created and defined by state law. Unless some federal interest

requires a different result, there is no reason why such interests should be analyzed differently

simply because an interested party is involved in a bankruptcy proceeding."). The parties have not

argued, nor does the Court conclude, there is any federal interest requiring use of other than state

law in the instant analysis. Therefore, the Court must look to the substantive law of the

Commonwealth of Virginia, where the Property is located and in accordance with the terms of the

Deed of Trust, to determine the requirements for a valid secured claim. *See* Exh. B to Motion, at

10.

A monetary obligation arises when "'a creditor . . . puts out his money specifically on a

particular piece of property'"—in other words, makes a loan—to a borrower; the borrower's

resulting promise to repay the creditor is memorialized in a document known as a promissory note.

*Larchmont Homes, Inc. v. Annandale Water Co.*, 201 Va. 178, 181 (1959) (quoting *Ransome v.*

*Watson's Adm'r*, 145 Va. 669, 676 (1926)). In Virginia, to ensure repayment of such monetary

obligation, the creditor most often requires the borrower to give (or grant) a deed of trust, which

creates a consensual lien, or security interest, on real property. *Hall v. JP Morgan Chase Bank,*

*N.A.*, Civil Action No. 5:18-cv-00106, 2020 WL 603480, at *6 (W.D. Va. Feb. 7, 2020) (citing

*Flowers v. FirstPlus Fin., Inc.* (*In re Flowers*), Adv. Proc. No. 98-1249, 1999 WL 118022, at *2

n.8 (Bankr. E.D. Va. Jan. 14, 1999)); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d

834, 844 (W.D. Va. 2018) (citing *Deutsche Bank Nat'l Tr. Co. v. Arrington*, 290 Va. 109, 117

(2015); *High Knob Assocs. v. Douglas*, 249 Va. 478, 484 n.4 (1995); *Augusta Nat'l Bank v. Beard's

Ex'r*, 100 Va. 687, 694 (1902)), *aff'd*, 917 F.3d 206 (4th Cir. 2019); *Cap. Funding & Consulting,

LLC v. Becker* (*In re Cap. Funding & Consulting, LLC*), Adv. Proc. No. 10-03004, 2010 WL

4118119, at *4 (Bankr. E.D. Va. Oct. 19, 2010) (citing *Am. Small Bus. Inv. Co. v. Frenzel*, 238 Va.

453, 457 (1989); *Interstate R.R. Co. v. Roberts*, 127 Va. 688, 692 (1920)), *aff'd per curiam on

direct appeal*, 447 F. App'x 496 (4th Cir. 2011) (unpublished decision).

As a negotiable instrument under Virginia law, a promissory note is "freely transferable."

*Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 621 (2011); *see* Va. Code Ann. §§ 8.3A-104(a),

(e). The person or entity to whom the funds are owed under a promissory note may endorse—that

is, sign—the instrument so as to entitle another person or entity to collect payment thereunder or

otherwise enforce the note. *See* Va. Code Ann. § 8.3A-204. Such endorsement may be a special

endorsement (identifying the specific person or entity thereafter entitled to enforce the note) or a

blank endorsement, which is any endorsement that is not a special endorsement. *Id*. §§ 8.3A-

205(a)-(b). "When endorsed in blank, an instrument becomes payable to bearer . . . ." *Id*. § 8.3A-

205(b); *see also id.* § 8.3A-109 (describing when a promise or order is payable to the bearer). As

a result, an instrument endorsed in blank evokes "a simple rule: possession permits enforcement."

*Horvath*, 641 F.3d at 621; *see also* Va. Code Ann. §§ 8.3A-301 (defining "person entitled to

enforce" an instrument to include "the holder of an instrument"), 8.3A-302 (defining "holder in

due course"). Virginia law permits such endorsement to appear either on the instrument itself or

on a paper affixed to the instrument, such that the endorsed, affixed paper, or allonge, becomes

part of the instrument itself. Va. Code Ann. § 8.3A-204(a); *see Ruggia v. Washington Mut*., 719 F.

42

Supp. 2d 642, 646 (E.D. Va. 2010), *aff'd per curiam*, 442 F. App'x 816 (4th Cir. 2011) (unpublished decision).

It is well-settled under Virginia law that "interests in deeds of trust accompany the promissory notes that they secure." *O'Dell v. Deutsche Bank Nat'l Tr. Co.*, No. 1:12-cv-985, 2013 WL 2389874, at *14 (E.D. Va. 2013) (citing *Williams v. Gifford,* 139 Va. 779, 784 (1924)). "[C]onsequently, the transfer of a note carries with it the security interest provided for in the deed of trust." *Fedewa v. J.P. Morgan Chase Bank, Nat'l Ass'n*, 921 F. Supp. 2d 504, 507 (E.D. Va. 2013) (citing *Va. Housing Dev. Auth. v. Fox Run Ltd.*, 255 Va. 356, 364 (1998); *Stimpson v. Bishop*, 82 Va. 190, 200 (1886)). Such principle underscores the fact that notes and deeds of trust, while distinct documents, are typically contemporaneously executed as part of a single transaction, with the terms of one document contemplating the other; thus, a note and deed of trust are generally construed as one contract, absent an indication to the contrary. *Horvath*, 641 F.3d at 623-24; *Va. Housing Dev. Auth.*, 255 Va. 364-65 (1998) (citing *Jim Carpenter Co. v. Potts*, 255 Va. 147, 156 n.5 (1998); *Richmond Postal Credit Union v. Booker*, 170 Va. 129, 134 (1938)).

b. Nations Lending Has Sustained Its Burden

Nations Lending has met its burden in moving for summary judgment regarding the validity of its secured claim. The material facts demonstrate a lack of genuine issue of material fact that Ms. Parris is, by admission in her schedules and copies of letters she voluntarily filed with the Court, in addition to the portions of the record cited by Nations Lending, the sole owner of the Property. Ms. Parris purchased the Property on January 31, 2018, using funds obtained via a loan from Nations Lending. The repayment terms of the loan provided by Nations Lending are memorialized in the Note signed by Ms. Parris. The Note is secured by the Deed of Trust on the Property, and the Deed of Trust was duly recorded in the Circuit Court of the City of Chesapeake,

Virginia. Ms. Parris does not dispute that she voluntarily and contemporaneously signed the Note

and Deed of Trust, nor does she allege an alternative source for the funds used to purchase the

Property from and pay the seller.

The original beneficiary and nominee of the Deed of Trust was MERS, which served in

such capacity on behalf of Nations Lending. MERS later assigned the Deed of Trust to Nations

Lending and duly recorded such assignment in the Circuit Court of the City of Chesapeake,

Virginia. *See Reyes v. Wells Fargo Bank, N.A.*, Civil Action No. 1:13-cv-547, 2013 WL 3874527,

at *2 (E.D. Va. July 24, 2013) (finding that a beneficiary and nominee on behalf of the original

lender could engage in transactions involving the note and deed of trust on the lender's behalf). As

certified judicial records in the Commonwealth of Virginia, the Deed of Trust and the assignment

thereof both constitute authenticated *prima facie* evidence of the contents set forth therein. *See* Va.

Code Ann. §§ 8.01-389(A), (C), (F).[51]

The material facts also demonstrate there is no genuine issue that Nations Lending

possesses the original Note as well as the original Deed of Trust. Nations Lending has affirmed

such facts in pleadings, discovery responses, by affidavit, and by counsel at hearings, including

the May 2, 2025 hearing on the instant motion. Moreover, Ms. Parris has acknowledged Nations

Lending's status as a secured creditor in her schedules, statements, and various pleadings. The

presence of blank endorsements on two (2) allonges affixed to the Note transform the Note from

one payable to a specific entity into a bearer instrument, such that the person or entity in possession

of the Note is permitted to enforce the terms of the Note and the related Deed of Trust. Nations

---

[51] To be sure, Virginia does not require the assignment or transfers of deeds of trust to be recorded
among the land records; rather, such recordation is at the discretion of the assignor or assignee. Va.
Code Ann. § 55.1-336; *see Horvath*, 641 F.3d at 626 (citing former Va. Code Ann. § 55-66.01
(amended and reenacted as Va. Code Ann. § 55.1-336 in 2019)).

Lending, by virtue of possessing the Note, is the proper entity to enforce its terms, including collection of payments thereunder, as well as the terms of the Deed of Trust, since the latter follows the Note in Virginia. Therefore, when examined even in the light most favorable to Ms. Parris, these material facts demonstrate there is no genuine issue. Further, these material facts further demonstrate, based upon the applicable Virginia law as set forth above, that Nations Lending holds a valid secured claim against Ms. Parris and is thus entitled to summary judgment as a matter of law in this regard.

### c. Ms. Parris Does Not Raise a Genuine Issue of Material Fact or a Valid Legal Argument to Preclude Summary Judgment

By contrast, Ms. Parris has failed to put forward specific evidence to establish a genuine issue as to any of the material facts. Likewise, she has failed to offer any valid argument that Nations Lending is not entitled to judgment as a matter of law so as to preclude a finding of summary judgment in favor of Nations Lending on the issue of the validity of its claim. Ms. Parris has instead offered a tapestry of unsupported inferences and speculation woven together by meritless theories and bold misunderstandings of industry and legal terminology that are contradictory to applicable law and her own admissions in documents filed in her case.

The predominant recurring theme among Ms. Parris's arguments is that Nations Lending does not hold a valid claim because it has not produced the original Note and Deed of Trust for her review. Ms. Parris asserts that Nations Lending refused to display the original Note and Deed of Trust to her because the documents are not in its possession. Further, Ms. Parris contends her conclusion is bolstered by the existence of the blank endorsement on the alloges to the Note and because no allonge was supplied to her at closing. Thus, Ms. Parris believes Nations Lending cannot be deemed to hold a claim against her. Ms. Parris grievously misstates the events in this

matter, the mechanics of transferability of notes in Virginia, and the typical temporal execution of an allonge.

Ms. Parris has been presented with the documents in multiple forms, including copies of the original closing documents and certified copies of the Note and Deed of Trust. Further, she had multiple offers to view the original documents themselves—including one opportunity ordered by the Court to take place in its Clerk's Office in response to Ms. Parris's own Motion to Compel. Ms. Parris wholly declined to avail herself of any of these opportunities until shortly before the May 2, 2025 hearing, which she admitted on the record. Tr. at 15. After such examination, Ms. Parris has made no specific allegations of discrepancies between the displayed, original wet-signature documents and any of the copies (both certified and otherwise) that she was previously furnished. Rather, despite her own lack of diligence, Ms. Parris continues to challenge the existence, and Nations Lending's possession, of the Note and Deed of Trust. Unfortunately, Ms. Parris, by her actions and pleadings, seems unwilling to accept that Nations Lending is, and has always been, the holder of the Note and is the beneficiary under the Deed of Trust.[52]

Ms. Parris's suggestion that the existence of an allonge here demonstrates a nefarious act by Nations Lending is further without merit. As detailed above, Virginia law supports the free transferability of promissory notes by permitting endorsements either on the note or affixed thereto via an allonge. The terms of both the Note and Deed of Trust embrace this premise. The Note, which Ms. Parris voluntarily signed signifying her promise to repay a sum certain, plainly states in the second paragraph, "I understand that the Lender may transfer this Note. The Lender or

---

[52] To the extent Ms. Parris's assertions insinuate that the Note and/or Deed of Trust are in some manner inauthentic or suspect, much like the plaintiff in *Hien Pham v. Bank of New York*, 856 F. Supp. 2d 804 (E.D. Va. 2012), such allegations are unsupported by either specific evidence or the general record in this matter. *Id*. at 813-14.

anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Nations Lending Document Production Responses, at 18. Likewise, the Deed of Trust provides that Ms. Parris was not entitled to any notice even if the Note had been transferred to another holder: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Exh. B to Motion, at 10.[53] Such language is commonplace in notes and deeds of trust in Virginia; the courts in both *Horvath* and *Hien Pham* recited substantially similar language from the valid notes and deeds of trust at issue in each of those cases. *See Horvath*, 641 F.3d at 619-20, 622; *Hien Pham v. Bank of New York*, 856 F. Supp. 2d 804, 814 (E.D. Va. 2012). As to the allonges themselves, Ms. Parris has not suggested or insinuated that the endorsements on the allonges are illegitimate, and even if the allonges had any procedural defect, such would be of no moment because Nations Lending, as the original lender, retains the right to enforce the Note and Deed of Trust for the reasons stated above. Finally, practically speaking, case law and this Court's experience both illustrate that allonges are traditionally *not* available at closing or part of the closing document package because they are not executed until *after* closing occurs since the assignee has nothing to give until that time. *See, e.g.*, *Highland Constr. Mgmt. Servs., LP v. Wells Fargo f/b/o Jerome Guyant IRA* (*In re Highland Constr.*

---

[53] Even if the Note and Deed of Trust had been transferred or assigned, Ms. Parris would not have standing to challenge such transaction. *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam) (unpublished decision) (holding that no standing exists for either a non-party to an assignment or one who is not a beneficiary thereunder to challenge said assignment); *Chistoni v. HSBC Bank USA, N.A. for Wells Fargo Asset Sec. Corp. Mortg. Pass-Through Series 2006-11*, Case No. 1:17-cv-00315, 2017 WL 1963902, at *3 (E.D. Va. May 11, 2017) ("In Virginia, courts have frequently dismissed challenges to assignments of deeds of trust and substitution of trustee documents on the basis of lack of standing because plaintiffs were not a party to or envisioned beneficiary of the contested document.") (citing *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 858 (E.D. Va. 2016), *aff'd per curiam*, 699 F. App'x 242 (4th Cir. Oct. 23, 2017) (unpublished decision); *Bennett v. Bank of Am., N.A.*, No. 3:12-cv-34, 2012 WL 1354546, at *7 (E.D. Va. Apr. 18, 2012)).

*Mgmt. Servs., LP*), 569 B.R. 673, 676 (E.D. Va.) (allonge executed ten months after execution of the promissory note), *aff'd per curiam*, 700 F. App'x 281 (4th Cir. 2017) (unpublished decision); *Brown Bark I L.P. v. Ebersole* (*In re Ebersole*), 440 B.R. 690, 695 (Bankr. W.D. Va. 2010) (allonge executed seventeen months after promissory note); *Walnut St. Fin., LLC v. Ferguson Holdings, LLC*, 107 Va. Cir. 257, 258 (Fairfax Cnty. 2021) (allonge executed after promissory note signed).

Ms. Parris also challenges the Note and Deed of Trust by asserting they do not constitute a valid contract since they were not signed on behalf of Nations Lending. Ms. Parris offers no legal support for this proposition. "Virginia law recognizes that a note and deed of trust constitute a legally enforceable contract[.]" *Englert v. Nationstar Mortg., Inc.*, Case No. 1:15-cv-303, 2015 WL 9275662, at *3 (E.D. Va. Dec. 18, 2015) (citing *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733 (2012)); *see also* Va. Code Ann. § 55.1-320 ("Every deed of trust to secure debts . . . is in the nature of a contract . . . ."). In Virginia, contracts, including notes, need only be signed by "the party to be charged"—in other words, the party against whom the document is to be enforced. *See* Va. Code Ann. §§ 8.01-27 (providing that notes must be signed by the "party who is to be charged" to be enforceable), 11-2 (providing for same as to certain contracts); *see also Klein v. Campbell*, No. 22-1497, 2023 WL 3845303, at *7 n.9 (4th Cir. Mar. 7, 2023) (unpublished decision) (concluding that lender was not required to sign note); *Fivet Grp. AG v. Lioncap Glob. Mgmt. LLC*, No. 1:24-cv-1407, 2025 WL 2318624, at *6 (E.D. Va. June 17, 2025) (citing Va. Code Ann. § 8.01-27). Additionally, Virginia law does not require the lender or beneficiary under a deed of trust to be a signatory thereto. *See* Va. Code Ann. § 55.1-300 *et seq.* (requirements for form and effect of deeds in Virginia); *Merch. Bank of Danville v. Ballou*, 98 Va. 112, 115 (1899) (finding that a deed of trust need not be executed by its beneficiary or trustee thereunder to be valid). The reality of the instant transaction is that Ms. Parris, as the borrower, made a promise to repay certain funds loaned

to her by Nations Lending to purchase the Property, as demonstrated by her signature on the Note. To secure such promise, she signed a Deed of Trust on the Property to provide a method of recourse to Nations Lending if Ms. Parris failed to perform under the Note or another event of default occurred. Neither the Note nor the Deed of Trust resemble anything but the customary forms of such documents in the Commonwealth of Virginia.

Ms. Parris posits, as a seeming factual issue in defense to entry of summary judgment, that the Note and/or Deed of Trust have been "securitized," insinuating that such may prohibit Nations Lending from enforcing the documents.[54] Nations Lending repeatedly denied that the loan has been securitized, and Ms. Parris has offered no proof for her contention. Such argument deserves only a brief comment. Even if this allegation of securitization had merit—and nothing indicates in the record that it does—Ms. Parris would not have standing to challenge such transaction because, as with any transfer or assignment, she would not be a party thereto. *Hendiazad v. Ocwen Loan Serv'g, LLC*, No. 1:19-cv-98, 2019 WL 1497026, at *2 (E.D. Va. Apr. 4, 2019); *Hardnett*, 204 F. Supp. 3d at 858 (citing *Grenadier v. BWW Law Grp.*, No. 1:14-cv-827, 2015 WL 417839, at *5 (E.D. Va.), *aff'd per curiam*, 612 F. App'x 190 (4th Cir. 2015) (unpublished decision)); *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012) (quoting *Upperman v. Deutsche Bank Nat'l Tr. Co.*, No. 1:10cv149, 2010 WL 1610414, at *2-4 (E.D. Va. Apr. 16, 2010), *aff'd*, No. 10-2308 (4th Cir. Feb. 25, 2011)). Moreover, "regardless of a lack of standing, courts have rejected the argument that securitization of a loan renders the loan unenforceable." *Hardnett*, 204 F. Supp. 3d at 858 (citing *Grenadier*, 2015 WL 417839, at *5); *see also Bey v. Michael*, Civ.

---

[54] Mortgage securitization has been summarized by the United States Court of Appeals for the Fourth Circuit as "numerous mortgages [that] are grouped together into a special purpose vehicle, such as a trust. The vehicle then issues mortgage-backed securities to investors." *Scheider v. Deutsche Bank Nat'l Tr. Co.*, 572 F. App'x 185, 188 n.2 (4th Cir. 2014) (per curiam) (unpublished decision). There is no evidence that the Note here is part of any such securitization arrangement.

No. 3:20cv631, 2021 WL 865805, at *7 (E.D. Va. Mar. 8, 2021) (citing *Suggs v. M &T Bank*, 230

F. Supp. 3d 458, 463 (E.D. Va.), *aff'd per curiam*, 694 F. App'x 180 (4th Cir. 2017) (unpublished

decision); *Jesse*, 882 F. Supp. 2d at 880).

Relatedly, Ms. Parris asserts that Freddie Mac[55] "owns" her loan and puts forth an

unverified internet printout in support of this premise. She also cites an alleged comment by

counsel for Nations Lending that Freddie Mac's role is as "investor." The Court rejects such

meritless argument as it belies the fact that Nations Lending has demonstrated there is no genuine

issue of material fact that it possesses the Note, which, under Virginia law, empowers Nations

Lending to enforce its provisions. Other courts, such as in *Rickert v. Specialized Loan Servicing*

(*In re Rickert*), BAP No. MT-19-1120-LBG, 2020 WL 1170732 (B.A.P. 9th Cir. Mar. 9, 2020), and

*Merritt v. PNC Bank* (*In re Merritt*), 555 B.R. 471 (E.D. Pa. 2016), *aff'd*, 702 F. App'x 90 (3rd

Cir. 2017), have reached the same conclusion when faced with such baseless argument. The debtor

in *Rickert* challenged the ability of Specialized Loan Servicing to foreclose, despite unrefuted

evidence it possessed the note, by arguing that the noteholder's trial witness was unaware of any

involvement of Freddie Mac in the transaction. *In re Rickert*, 2020 WL 1170732, at *1, 4. The

bankruptcy court, and thereafter the Bankruptcy Appellate Panel, dismissed this contention. *Id*. at

*4. The noteholder's witness had testified that Freddie Mac was an underlying investor, but the

Court found such "involvement ha[d] no bearing on whether [Specialized Loan Servicing] [was]

entitled to enforce the note." *Id*. (citing *Veal v. Am. Home Mortg. Serv'g., Inc.* (*In re Veal*), 450

B.R. 897, 911, 912 n.25 (B.A.P. 9th Cir. 2010), for the proposition that an owner of a note and the

---

[55] "Freddie Mac" commonly refers to the Federal Home Loan Mortgage Corporation. *In re Ditech Holding Corp*., 606 B.R. 544, 555 n.8 (Bankr. S.D.N.Y. 2019). The Court presumes the entity to which Ms. Parris refers comports with the commonplace reference. Even if this is not the case, the analysis herein remains the same.

party entitled to enforce it need not be one and the same). The *Merritt* court likewise gave no

credence to the argument that Freddie Mac's ownership of a loan divested the holder of the note

of the ability to collect upon and enforce it. *In re Merritt*, 555 B.R. at 476-77. Therefore, even

taking Ms. Parris's unsubstantiated allegations in the light most favorable to her position, the fact

remains that Nations Lending possesses the Note and thus is entitled to enforce it for the earlier

stated reasons.[56]

Ms. Parris also maintains that the loan transaction with Nations Lending violates various

laws and/or legal principles. These arguments include that bearer notes are an illegal instrument

form; that Nations Lending is a "Foreign Business Corporation"[57] with the inability to transact

within the United States (and therefore cannot collect payments from her); that the loan exceeded

a maximum nine-month term limit; and Nations Lending committed unspecified fraud[58] by failing

---

[56] For these same reasons, the Court concludes that any relationship or role in the transaction by Bank of New York Mellon Trust does not affect Nations Lending's status as holder of the Note and likewise does not preclude summary judgment, despite Ms. Parris's insinuations to the contrary. *See* Section II.E.3, *supra*.

[57] While Ms. Parris appears to believe that Nations Lending is not a corporation based in the United States, the Deed of Trust plainly indicates that Nations Lending "is a Corporation, existing under the laws of Ohio." Exh. B to Motion, at 3.

[58] Ms. Parris has wholly failed to satisfy the requirements and heightened pleading standard for fraud:

> To plead a claim for fraud, a plaintiff must show: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. Additionally, the Federal Rules of Civil Procedure mandate a heightened pleading standard for fraud claims. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." The circumstances required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

*Wolf*, 512 F. App'x at 343-44 (quoting Fed. R. Civ. P. 9(b); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)) (citing *State Farm Mut. Auto. Ins. Co. v.*

to disclose the true nature of the Note as a security[59] in violation of Regulation Z of the Truth in

Lending Act. She also makes unsupported statements alleging Nations Lending fails to pay taxes.

Ms. Parris cites no factual or legal basis for these theories other than her unverified printouts from

the internet and otherwise unsupported, bare allegations and speculation, which do not preclude

summary judgment.

Ms. Parris places significant emphasis on her argument that her discovery requests were

not answered and thus discovery is incomplete. This assertion is simply inaccurate. Ms. Parris was

afforded the opportunity to conduct discovery and indeed promulgated significant requests in the

form of documents and interrogatories upon Nations Lending. When Nations Lending objected to

certain of the requests, Ms. Parris filed a Motion to Compel Discovery. Despite her nonappearance

at the hearing on her own motion, the Court meticulously dissected the discovery requests in the

interests of justice and due process. The Court overruled many of Nations Lending's objections

and ordered additional disclosures, responses, and production of documents. Nations Lending

timely and completely complied with the Court's order. Ms. Parris neither moved the Court to

reconsider its order on the Motion to Compel (on which she was largely successful despite her

non-appearance) nor asked for an extension of time for additional discovery or lodged further

---

*Remley*, 270 Va. 209, 218 (2005)). Thus, the Court need not further address Ms. Parris's
contentions in this regard.

[59] The argument that a note such as the one at issue here is a security contravenes established case
law, as a note secured by a lien on residential real property is not a "security" in the context of
securities laws. *See Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 455 (4th Cir. 1991) (citing *Reves
v. Ernst & Young*, 494 U.S. 56 (1990)); *Johnson v. First Cmty. Bank*, Civil Action No 3:14cv563,
2015 WL 1414948, at *10 (E.D. Va. Mar. 26, 2015) (citing *Reves*, 494 U.S. at 65); *see also In re
McKeever*, 588 B.R. 649, 658 (Bankr. N.D. Ga. 2018) (citing *Reves*, 494 U.S. at 61-66, for the
proposition that the use of the term "any note" in the Securities Exchange Act does not encompass
notes for consumer financing or those secured by residential real property); *Greenbelt Claims
Recovery v. Transnation Title Ins. Co.* (*In re Greenbelt Prop. Mgmt. LLC*), Adv. No. 2:09-ap-
00218-EPB, 2013 WL 3199809, at *2 (Bankr. D. Ariz. June 21, 2013) (quoting *Reves*, 494 U.S. at
65-66).

discovery objections. Ms. Parris's other discovery-related contentions belie the actual source of her consternation: Nations Lending's responses and documents are not ones with which Ms. Parris agrees and/or support her arguments.

To be sure, Federal Rule of Civil Procedure 56(d) (as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7056) provides a vehicle for the nonmovant to a summary judgment motion to seek relief by "show[ing] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Upon such showing, a court, in its discretion, may "defer considering the motion or deny it; allow time to obtain affidavits or declarations or to take discovery; or issue any other appropriate order." *Id*. The Fourth Circuit Court of Appeals has repeatedly pronounced that entry of summary judgment against a *pro se* party is both premature and disfavored whether the latter has not had the opportunity to conduct discovery. *See, e.g.*, *Farabee v. Gardella*, 131 F.4th 185, 194-96 (4th Cir. 2025); *Slusser v. United States*, No. 23-6677, 2025 WL 521301, at *2-3 (4th Cir. Feb. 18, 2025) (per curiam) (unpublished decision). No such motion has been made here, and even if the Court construed Ms. Parris's defense that discovery is incomplete as a Rule 56(d) motion, the facts, circumstances, and procedural history of the instant matter would not support invocation of any of the remedies specified in Rule 56(d).

Lastly, the Court will address Ms. Parris's assertions regarding immaterial facts and a defense raised at the May 2, 2025 hearing. Ms. Parris takes issue with certain hearing dates and unrelated case administration matters, all of which are immaterial to the summary judgment considerations. As the Court need only evaluate material facts in the context of summary judgment, Ms. Parris's contentions on these irrelevant matters need not be addressed. Finally, during her argument in opposition to the Motion for Summary Judgment, Ms. Parris asserted that she wished

to access her "birth certificate trust" by redeeming her birth certificate.[60] To the extent Ms. Parris

raises this argument as a defense to entry of summary judgment, such defense is entirely without

merit.[61]

---

[60] The Court confirmed Ms. Parris's terminology, as it was wholly unfamiliar with such phrase.
*See* Tr. at 15.

[61] The "birth certificate trust" theory rests on the argument that the Federal government uses
documents such as birth certificates to create fraudulent contracts, which causes individuals to
"unknowingly pledge themselves and their property . . . as security for the national debt in
exchange for the benefits of citizenship." *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753,
758 (W.D. Va. 2007), *aff'd per curiam*, 282 F. App'x 260 (4th Cir. 2008) (unpublished decision).
The theory further holds that the government maintains profits from such transactions in secreted,
individual trust accounts, which funds can be accessed by redeeming one's birth certificate to allow
one to discharge their debts. *Id*. at 759. "The proposition that a United States birth certificate is a
negotiable instrument that can be sold is such a scam and has been identified as one by the United
States Department of the Treasury." *In re Henry*, Case No. 24-54394-PWB, 2024 WL 3886238, at
*2 (Bankr. N.D. Ga. Aug. 20, 2024) (citations omitted). *See also* United States Dep't of the
Treasury, *Frauds, Phonies, & Scams—Birth Certificate Bonds*, https://www.treasurydirect.gov/
laws-and-regulations/fraud/birth-certificate-bonds/ (last visited September 23, 2025) (warning of
false claims that a birth certificate is a negotiable instrument or otherwise holds monetary value).
Countless courts, in the Fourth Circuit and elsewhere, have rejected this bogus theory *en toto* in
criminal, civil, and bankruptcy cases. *See, e.g.*, *Miller v. Sec'y of Treasury*, No. 21-14224, 2022
WL 1633604, at *1-2 (11th Cir. May 24, 2022) (per curiam) (unreported decision) (denying theory
and dismissing frivolous complaint); *Rivera v. United States*, 105 Fed. Cl. 644, 650 (Fed. Cl. 2012)
(rejecting notion that a birth certificate creates a contract that confers the right to sue or otherwise
imposes obligations upon the Federal government); *Prelle v. United States Mint*, Civil Action No.
24-5291, 2024 WL 4898064, at *6-7 (E.D. Pa. Nov. 26, 2024) (dismissing with prejudice
complaint seeking monetary damages and other relief in part on the fictitious basis that plaintiff's
birth certificate created a contract with the United States and the state of New Jersey); *Sumter v.
Loftis*, Civ. Action No. 3:23-6759-MGL-PJG, 2024 WL 477044, at *1-2 (D.S.C. Jan. 12, 2024)
(recommending dismissal of frivolous complaint for failure to state a cognizable legal claim based
upon argument that certain collateral attached to plaintiff's birth records and social security
number), *adopted sub nom. Sumter v. Simmer*, 2024 WL 476383 (Feb. 7, 2024); *Prelle v. Chief
Exec. of New Jersey*, Civ. Action No. 16-5447, 2022 WL 657641, at *2 (D.N.J. Mar. 4, 2022)
(dismissing with prejudice second amended complaint that sought relief on the theory that
plaintiff's birth certificate created a trust) (unpublished decision), *aff'd sub nom. Prelle v. United
States*, No. 22-1453, 2022 WL 16958896 (3rd Cir. Nov. 16, 2022), *cert. denied*, 143 S. Ct. 2590
(2023); *Herrington v. Rickard*, Civil Action No. 1:16-cv-03617, 2016 WL 8188769, at *3, 5 (S.D.
W. Va. Oct. 13, 2016) (unreported decision) (rejecting birth certificate trust theory asserted by
prisoner in a petition for writ of habeas corpus), *adopted* 2017 WL 441541 (Feb. 1, 2017); *In re
Henry*, 2024 WL 3886238, at *1-2 (overruling debtor's objection to Chapter 7 Trustee's report of
no distribution and finding debtor's argument that the trustee failed to consider her birth certificate
as an asset that could be used to pay off her debts to be "absurd").

## 2. Amount of Nations Lending's Claim

Nations Lending asserts that the original principal amount of the loan to Ms. Parris was $295,000.00, which amount accrues interest at four (4) percent per annum, with monthly principal and interest payments during the thirty-year term of $1,412.77. Ms. Parris offers no evidence, either within or extraneous from the record, to counter these facts. The Court has meticulously scrutinized Nations Lending's calculations, the supplied payment history, the monthly loan statements, and related documents in the record. Nations Lending asserts a total amount due of $351,936.45 of December 14, 2024. Nations Lending itemizes the components of this figure as unpaid principal; accrued interest; late charges; deferred payments;[62] funds advanced for certain tax and insurance payments on specified dates; fees for delineated property inspections; and enumerated attorney fees and costs. Each component's amount is substantiated by uncontroverted supporting documents in the record, as well as by an unrefuted affidavit by a corporate representative of LoanCare, which services the loan on behalf of Nations Lending. The Note and Deed of Trust contain provisions permitting Nations Lending to assess Ms. Parris for the specified fees, costs, and expenses.

Ms. Parris asserts that Nations Lending has not proven that it funded the loan in an effort to show a genuine issue of material fact. This contention is not only unsupported, but also, it cannot be factually correct. Had the loan not been funded, title to the Property could not have been conveyed to Ms. Parris at closing as a matter of common sense. It is both unfathomable and fantastical to conjure that, had the seller of the Property not received the agreed-upon purchase

---

[62] Ms. Parris concurred with the total amount of deferred payments in her pleading filed August 7, 2024. *See* ECF No. 77, at 4.

price for the Property at closing in January 2018, the seller would not have sought recourse against

Ms. Parris in the seven (7) years since.

Ms. Parris further attempts to place in genuine issue the total amount owed by contesting

the number of payments deferred due to the COVID-19 pandemic but has offered no

documentation in support. Rather, the Court notes that in an earlier pleading, Ms. Parris agreed

with Nations Lending that the deferment period was eighteen (18) months. *See* ECF No. 77, at 4.

Ms. Parris's final defense consists of a conclusory denial of the total amount owed ($351,936.45)

as contrasted with the July 1, 2022 balance of $271,755.09. These attempts to put facts at issue

also fall flat. Ms. Parris has offered no evidence regarding the amount she paid (or failed to pay)

to Nations Lending under the Note. Further, she has not suggested that the Note has been paid off,

released, or otherwise cancelled by Nations Lending. Rather, her protestations indicate perhaps

what is best described as a fundamental misunderstanding of how such loan balances are

calculated, particularly in the event of a significant period of non-payment and foreclosure

attempts. Illustrative is her challenge to the total amount owed, which she believes should equate

to the principal amount owed,[63] without any assessment of interest, late charges, or other fees,

costs, and expenses permitted under the Note and Deed of Trust, despite her over three (3) year

failure to make *any* payments on the loan.

Therefore, as Ms. Parris has failed to sustain her burden of coming forward with specific

material facts giving rise to a genuine issue or otherwise showing that Nations Lending has not

established the absence of a genuine issue, the Court finds no genuine issue of material fact

regarding the total amount owed by Ms. Parris to Nations Lending under the Note. The Court

---

[63] Indeed, Ms. Parris listed the amount of secured debt owed to Nations Lending on her Schedule D of $271,755.09, which amount precisely matches the amount of unpaid principal set out by Nations Lending.

further finds that the total amount due of $351,936.45 is properly calculated, due, and owing to

Nations Lending pursuant to the provisions of the valid Note and Deed of Trust. Accordingly,

Nations Lending is entitled summary judgment as a matter law in this regard.

V. CONCLUSION

The loan that enabled Ms. Parris to purchase the Property represents typical, standard

residential real estate financing. Unlike a significant portion of similar such transactions that the

Court reviews, the Note here was never transferred to another entity. After the January 31, 2018

closing, Ms. Parris made regular payments for some time until apparent financial difficulties arose.

Nations Lending deferred a substantial number of payments under its COVID-19 forbearance

program, the terms of which were plain and unambiguous. Following a handful of payments made

after the forbearance period, Ms. Parris has made no payments for an extended period of time

(since June 2022). She has not accepted any modified loan terms offered by Nations Lending and

has not sought alternative financing options. While the Court regrets the financial circumstances

facing Ms. Parris, nonetheless there is nothing inappropriate or unusual about this loan transaction.

The Court is satisfied based upon the record before it that Nations Lending is the holder of the

Note and beneficiary under the Deed of Trust and further that Ms. Parris owes the amount alleged

by Nations Lending. Therefore, for the reasons stated herein, the Court finds that the Motion for

Summary Judgment filed by Nations Lending should be granted.

A separate Order will be contemporaneously issued consistent with this Memorandum

Opinion.

The Debtor is advised that an appeal lies from this matter to the United States District Court

for the Eastern District of Virginia. Except as provided in Federal Rules of Bankruptcy Procedure

8002(b)-(d), any notice of appeal must be filed with the Clerk of this Court within fourteen (14)

days of the date of entry of the Order memorializing the Court's ruling. The filing fee for a notice

of appeal is $298.00.

 The Clerk shall mail a copy of this Memorandum Opinion to the Debtor, counsel for

Nations Lending Corporation, the Chapter 7 Trustee, and to the Office of the United States Trustee.

 IT IS SO ORDERED.

 Entered this **23rd day** of **September, 2025**, at Norfolk, in the Eastern District of Virginia.


       /s/ Stephen C St-John

       STEPHEN C. ST. JOHN
       United States Bankruptcy Judge


       Entered On Docket: 09/23/2025